***********
Following the hearing before the Deputy Commissioner, the Deputy Commissioner granted plaintiff additional time to depose Rodney McCoy. Defendants objected on the grounds that the testimony of Mr. McCoy and the dispatch report plaintiff intended to introduce during Mr. McCoy's testimony were inadmissible hearsay. The Deputy Commissioner held Mr. McCoy's deposition testimony and the dispatch reports were admissible but with all references to statements by unknown callers stricken from the record.
The Full Commission filed an Order on December 29, 2004 finding that the dispatch reports in their entirety were admissible evidence under the hearsay exceptions in the N.C. Rules of Evidence, Rule 803(1) and (2), as well as Rule 803(6) and (8). The Commission reopened the record to allow the parties to re-depose Dr. William Massello to obtain his expert opinions in light of the information contained in the dispatch reports. The transcript of the second deposition of Dr. Massello has been received by the Commission and is received into the evidence of record.
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has shown good grounds to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Fireman's Fund Ins. Co./The Goff Group is the carrier on the risk.
3. An employee-employer relationship existed between defendant-employer and Walter Wooten (hereinafter, "decedent") at all relevant times.
4. Decedent's average weekly wage was $848.98, with a resulting compensation rate of $565.98.
5. The following stipulated exhibits were admitted into evidence:
(a) Stipulated Exhibit #1: Pre-Trial Agreement.
(b) Stipulated Exhibit #2: Virginia State Police Report, Medical Examiner's Certificate of Death, Report of Autopsy, Medical Records, Dispatch Report and other exhibits.
(c) Stipulated Exhibit #3: Photographs.
6. The issue for determination is whether decedent's death is compensable under the Act.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Prior to his death decedent drove trucks for defendant-employer and routinely made two round trips per week between the Hickory, North Carolina area and New Jersey.
2. On May 9, 2002, decedent was involved in a fatal accident while working as a truck driver for defendants. Decedent was traveling by himself driving his tractor-trailer at an estimated speed of 65 m.p.h. at approximately 10:45 p.m. His truck ran off the left side of the road and struck the guardrail on Interstate 81 in Augusta County, Virginia. The vehicle came to rest in the median. No other vehicles were involved in the incident.
3. The Virginia State Police were dispatched to the scene after an unknown passerby called 911 to report the accident. The passerby reported that her husband checked the driver (decedent) who was unconscious but still breathing. Emergency rescue workers pronounced decedent dead at the accident scene.
4. Following the accident, decedent's vehicle was inspected and found to be missing two tires on its left side. The evidence indicates that the tires most likely came off the vehicle as a result of damage to the tire rims caused when the vehicle hit the guardrail. Plaintiff argues decedent encountered debris in the roadway or had a tire blow out, causing him to lose control of the vehicle, resulting in increased stress and adrenaline and triggering a fatal heart attack. The 911 dispatch report indicates that an unknown 911 caller reported that decedent's tractor trailer "appeared to have struck tire debris in [the] road and ran off [the] roadway." The record is unclear why decedent's vehicle lost control. Defendants argue that decedent had a heart attack that caused him to lose control of his vehicle.
5. At the time of his death, decedent was a 51-year-old male with a prior history of heart related medical conditions, including one prior heart attack. Approximately two to three years prior to the accident, decedent began treatment by a cardiologist on an annual basis.
6. On May 10, 2002, an autopsy was performed on decedent by Dr. William Massello, the Assistant Chief Medical Examiner for the Virginia Office of the Chief Medical Examiner in western Virginia. Dr. Massello found that at the time of decedent's death, he was suffering from arteriosclerotic heart disease, or a hardening and narrowing of the arteries that supply blood to the heart. In his first deposition, Dr. Massello explained, "the main finding is he had very significant hardening of the arteries. And the most severe hardening of the arteries were in the arteries that supply blood to the heart. And these were almost completely — they were so narrow that they were almost closed completely shut." Dr. Massello further testified that decedent's heart disease triggered an arrhythmia, causing decedent to experience a sudden heart attack. Finally, Dr. Massello testified to a reasonable degree of medical certainty that the immediate cause of decedent's death was arteriosclerotic heart disease.
7. In his first deposition Dr. Massello was asked whether the stress and physical exertion caused by the truck losing two tires, striking the guardrail and going into the median could have triggered decedent's arrhythmia. Dr. Massello stated: "If a person were physically or mentally stressed because of that and his blood pressure went up and the adrenaline came out and . . . physical exertion took place, those would be things that would precipitate an arrhythmia in this man with this kind of heart disease." Upon further questioning whether the arrhythmia took place while decedent was driving the truck or after he stopped driving the truck, Dr. Massello stated that there was no way that he could say one way or the other.
8. During the second deposition, Dr. Massello again stated to a reasonable degree of medical certainty that decedent's death was a result of an arrhythmia caused by arteriosclerotic heart disease. Regarding the information contained in the 911 reports, Dr. Massello stated that he did not know whether decedent allegedly struck debris because there was a heart attack in progress or whether decedent struck debris because he could not avoid it. Dr. Massello further stated decedent "could have had the accident because of a heart attack or he could have had the heart attack because of the accident." Dr. Massello also indicated that most people who have heart attacks while driving manage to steer the vehicle off the road, even if they lose consciousness before the car stops.
9. The greater weight of the competent medical and other evidence of record establishes that the medical cause of decedent's death was cardiac arrhythmia sustained during an accident occurring within the course of his employment.
10. At the time of his death decedent was survived by his wife, Eleanor G. Wooten, to whom he was married on October 12, 1984. Eleanor G. Wooten has not worked since 1995. The Social Security Administration determined that Eleanor G. Wooten became disabled on June 1, 2002, a month after decedent's death.
11. Decedent had an adopted son, Francis Joseph Wooten, who was 22 years old when decedent died. Decedent was not survived by any other person who was either wholly or partially dependent upon him for their support.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for plaintiff to recover workers' compensation benefits for the death of decedent, she must prove that death resulted from an injury by accident arising out of and in the course of decedent's employment. N.C. Gen. Stat. § 97-2(6). Plaintiff has the burden of proving each of these elements. Henry v. Leather Co., 231 N.C. 477, 479, 57 S.E.2d 760, 761
(1950).
2. Where circumstances concerning work-relatedness are unknown and where the death occurs within the course of employment, there is a "presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown." Pickrell v.Motor Convoy, Inc., 322 N.C. 363, 370, 368 S.E.2d 582, 586 (1988). Where plaintiff is entitled to the presumption, the defendant then has the burden of producing credible evidence that the death was not accidental or did not arise out of the employment. Bason v. Kraft Food Serv., Inc.,140 N.C. App. 124, 128, 535 S.E.2d 606, 609 (2000); Melton v. City ofRocky Mount, 118 N.C. App. 249, 256, 454 S.E.2d 704, 709 (to rebut the presumption, defendant must produce "sufficient, credible evidence that the death is non-compensable"), disc. review denied, 340 N.C. 568,460 S.E.2d 319 (1995). If the defendant meets this burden of production, the presumption is successfully rebutted. The Industrial Commission must find the facts based on all the evidence presented, drawing such reasonable inferences from the competent, credible evidence as may be permissible. The burden of persuasion remains with the plaintiff. Pickrellv. Motor Convoy, Inc., supra; Bason v. Kraft Food Serv., Inc., supra.
3. An injury caused by a heart attack may be compensable if the heart attack is due to an accident; for example, when the heart attack is due to unusual or extraordinary exertion or extreme conditions. Cody v.Snider Lumber Co., 328 N.C. 67, 71, 399 S.E.2d 104, 106 (1991).
4. In the instant case, the greater weight of the evidence indicates that the circumstances regarding the work-relatedness of decedent's death are unknown and that the death occurred as the result of an injury by accident sustained in the course of decedent's employment. It is uncontested that plaintiff was within the course of his employment and was engaged in his employer's business at the time of his death. The fact that the immediate medical cause of decedent's death is known does not indicate that the Pickrell presumption does not apply. Pickrell v. MotorConvoy, Inc., supra.
5. Decedent was involved in a motor vehicle accident while in the course and scope of his employment with defendant-employer. As a result of the accident, decedent suffered a cardiac arrhythmia and died. The only element at issue is whether decedent's injury by accident arose out of the employment. The evidence fails to show whether decedent had a heart attack that caused the motor vehicle accident or whether the circumstances of the accident caused decedent's heart arrhythmia. Therefore, defendants have failed to meet their burden of showing that plaintiff's arrhythmia occurred prior to and caused plaintiff's injury by accident. Defendants have not successfully rebutted the presumption by coming forward with sufficient, credible evidence that death occurred as a result of a non-compensable cause. Pickrell v. Motor Convoy, Inc.,supra; Melton v. City of Rocky Mount, supra. Plaintiff is entitled to thePickrell presumption that decedent's cause of death was an injury by accident arising out of the employment. Id.
6. Decedent sustained an injury by accident arising out of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's claim is therefore compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1 et seq.
7. Eleanor G. Wooten was wholly dependent upon decedent at the time of his death and is therefore entitled to receive death benefits at the rate of $565.98 per week for a period of 400 weeks from the date of death of the employee. N.C. Gen. Stat. § 97-38.
8. N.C. Gen. Stat. § 97-38(3) provides that if a widow is unable to support herself because of physical or mental disability as of the date of death, compensation payments shall continue during her lifetime or until remarriage. However, in the case at bar, there is insufficient evidence of record from which to determine whether Eleanor G. Wooten was disabled and unable to support herself at the time of plaintiff's death. The Social Security Administration found that her disability began as of June 1, 2002, which was after the date of decedent's death.
9. Plaintiff is entitled to payment by defendants of any medical expenses incurred for the treatment of decedent's injuries sustained as a result of the injury by accident. N.C. Gen. Stat. § 97-25.
10. Plaintiff is entitled to payment by defendants of $3,500.00 in funeral expenses. N.C. Gen. Stat. § 97-38.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below, defendants shall pay death benefits to the deceased employee's wife, Eleanor G. Wooten, at the rate of $565.98 per week for a period of 400 weeks beginning May 9, 2002. All sums that have accrued shall be paid in one lump sum.
2. This Opinion and Award does not address the issue of whether plaintiff is entitled to lifetime death benefits on account of a disability for which she was unable to support herself at the time of decedent's death. If the parties are able to stipulate to plaintiff's disability and entitlement to lifetime benefits, they should request that the Commission issue an amended Opinion and Award to include these benefits. In the event that the parties are unable to stipulate, either party may request a further hearing on this issue.
3. Defendants shall pay decedent's burial expenses, not to exceed $3,500.00.
4. Defendants shall pay all medical bills for decedent that were incurred as a result of the injury by accident.
5. A reasonable attorney's fee of 25% of the compensation paid to plaintiff in Paragraph 1 above is hereby awarded to plaintiff's counsel. The amount that has accrued shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff under this Award.
6. Defendants shall pay the costs.
This the 8th day of April 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/crb