TONI LAGRANGE MELTON, WIDOW; TONI LAGRANGE MELTON, GUARDIAN AD
LITEM FOR RYAN D. MELTON, MINOR SON OF ROBERT D. MELTON
(DECEASED), EMPLOYEE-PLAINTIFFS-APPELLEES v. CITY OF ROCKY
MOUNT, EMPLOYER, SELF-INSURED, DEFENDANT-APPELLANT

No. 9410IC473

(Filed 21 March 1995)

**Workers' Compensation § 115 (NCI4th)— death on the job—
cause of death unknown—application of Pickrell presump-
tion of compensability—insufficiency of evidence to rebut
presumption**

Where death occurred within the decedent's course of
employment as a traffic light technician and circumstances bear-
ing on the work-relatedness of his death were unknown, the
Industrial Commission correctly invoked the *Pickrell* presump-
tion of compensability; furthermore, the Commission did not err
in rejecting defendant's contention that the introduction of any
evidence, no matter how speculative or unpersuasive, wholly
deflates the *Pickrell* presumption and in determining that the
evidence proffered by defendant was insufficient to rebut the
presumption.

**Am Jur 2d, Workers' Compensation §§ 263 et seq.**

Appeal by defendant from order entered 24 February 1994 by the
North Carolina Industrial Commission. Heard in the Court of Appeals
25 January 1995.

*Taft, Taft & Haigler, P.A., by Thomas F. Taft and James S.
Walker, for plaintiff-appellee.*

*Poyner & Spruill, L.L.P., by Ernie K. Murray, for defendant-
appellant.*

MARTIN, MARK D., Judge.

The issue presented is whether the Industrial Commission erred
in applying the *Pickrell* "presumption of compensability" and award-
ing compensation to plaintiffs. We affirm.

Robert D. Melton, decedent, was employed by defendant, City of
Rocky Mount, as a traffic signal technician. His job duties included
repair and maintenance of traffic lights operated within the city lim-

its. On 7 May 1990 Melton and co-worker Ronald Lewis were sent to an intersection where a traffic light was in need of repair. Melton was transported to the height of the traffic light by use of a "bucket," which is a mechanical device used for lifting workers to moderate heights. Prior to Melton entering the bucket, Mr. Lewis testified he checked the electrical current to ensure it was turned off. While Melton was elevated in the bucket, Mr. Lewis heard a noise of "beating and banging" and, when he looked up, observed Melton "waving his hands and flopping" around. Melton was lowered to the ground and paramedics were immediately summoned to the scene. He was rushed to the hospital, where all efforts to revive him failed and he was pronounced dead.

On 8 May 1990, Dr. Louis Levy, local medical examiner, performed an autopsy and issued his autopsy report. Dr. Levy indicated the probable cause of death was anoxic encephalopathy (lack of oxygen to the brain) due to the aspiration of gastric contents. On 9 May 1990 Dr. Levy issued the medical examiner's certificate of death listing the immediate cause of death as "pending." On 7 June 1990 Dr. Levy issued a supplemental report listing "anoxic encephalopathy due to aspiration of gastric contents" as the immediate cause of death and also listing the manner of death as "accident."

The Rocky Mount Police Department conducted an investigation but could not determine the cause of death. However, they did conclude decedent did not sustain any type of electrical shock.

At the widow's request, on 7 September 1990 decedent's body was exhumed and a second autopsy was performed by Dr. Lawrence S. Harris, a forensic pathologist at ECU School of Medicine in Greenville, North Carolina. Dr. Harris filed an autopsy report indicating no new pathologic diagnoses and no evidence of electrical injury. On 12 December 1990 Dr. Harris issued an opinion letter indicating an aerosol spray lubricant decedent was using immediately prior to his death could potentially be a causal factor in the death. By letter dated 1 April 1991, Dr. Harris indicated he could not tie the aerosol to decedent's death.

The Chief Medical Examiner's office reviewed the matter and ordered its own testing to determine the cause and manner of death. On 12 September 1990 Dr. Thomas Clark, Associate Chief Medical Examiner for the State of North Carolina, issued a supplemental report of cause of death changing the cause of death to "aspiration of

gastric contents due to undetermined" causes. The manner of death was listed as "not determined."

In response to correspondence from Dr. Levy, on 27 December 1990, Dr. John Butts, Chief Medical Examiner for the State of North Carolina, issued a supplemental report of cause of death to Dr. Levy again stating the immediate cause of death was "aspiration of gastric contents due to undetermined causes." However, the manner of death was changed from "not determined" to "accident." Both Drs. Clark and Butts acted pursuant to Section 130A-385(c) of the General Statutes of North Carolina, which states: "[t]he Chief Medical Examiner shall have the authority to amend a medical examiner death certificate."

Dr. Levy never signed the supplemental report of cause of death containing the amendments issued by the Office of the Chief Medical Examiner, and did not notify the Chief Medical Examiner's Office of his failure to do so.

On 3 October 1991, Associate Chief Medical Examiner Clark filed the supplemental report of cause of death listing the immediate cause of death as "aspiration of gastric contents due to undetermined" causes, and listing the manner of death as "accident."

Dr. Arthur E. Davis, Jr., defendant's expert witness, testified decedent died from aspiration of gastric contents caused by "gastroesophageal reflux syndrome," a noncompensable idiopathic condition. As support for his conclusion, Dr. Davis cited decedent's asthma as a child and his alleged chronic bronchitis at the time of the accident. Dr. Davis also commented on the supplemental report of cause of death certificate prepared by Dr. Clark. Dr. Davis testified Dr. Clark's supplemental report of cause of death filed 6 September 1990 had been "reversed" by Dr. Levy:

Walker (attorney for plaintiff): And you didn't talk with the pathologist in completing this document?

Davis: No, this has been reversed.

Walker: It's been reversed?

Davis: Yes, it has.

Walker: How so?

Davis: Dr. Levy was outraged at his report being changed.

Walker: Do you have a document or material —

Davis: I asked Dr. Levy for that document, but they could not find it.

Dr. Davis further testified:

Davis: This was Dr. Clark's opinion without the courtesy of consulting with Dr. Levy. And that's why Dr. Levy, through many negotiations, had it reversed so that it correspond[ed] to the death certificate.

Walker: Where is the reversal, Sir?

Davis: I do not know. I asked them for that.

Dr. Davis did not produce a written report.

Subsequent to the hearing, Dr. Davis generated an undated opinion letter. Dr. Davis wrote, "[a]s I further testified at the hearing, it is my opinion that the gastroesophogeal [sic] reflux and/or the aspiration of gastric contents did not result from an injury by accident sustained by Mr. Melton during the course and scope of his employment with the City of Rocky Mount."

Although the evidence indicated decedent suffered a single asthma attack as a small child, it does not appear he presented any further asthma symptoms again. Decedent's widow never observed him have an asthma attack. Decedent's pediatrician stated he had never treated decedent for any serious condition and that he had enjoyed excellent health other than ordinary childhood illnesses.

Decedent's widow testified she had seen her husband immediately prior to the accident. She testified that decedent ate a normal meal at lunch and she did not notice anything unusual about him.

When decedent returned to work after lunch, co-worker Ronald Lewis testified he looked "fine" and did not appear to be sick when they went to repair the traffic light. Mr. Lewis also testified decedent's appearance was the same after lunch as it was before lunch, and he did not appear to be sick at either time. Mr. Lewis had worked with decedent on several occasions and had never seen him have a seizure or convulsion.

On 8 October 1991 Dr. Clark issued an opinion letter addressing the likelihood of gastroesophageal reflux syndrome causing decedent's death. In this letter Dr. Clark explained the procedural process

for amending the death certificate and indicated the 1990 amendment had never been filed due to a clerical oversight. Dr. Clark also stated that Dr. Levy did not have the authority to reverse the determination of the Chief Medical Examiner's Office. According to Dr. Clark, "Now that I have personally signed the supplemental death certificate it can no longer be modified by anyone outside of the chief medical examiner's office." Dr. Clark also stated, "[i]t is my opinion that [decedent's] aspiration probably occurred as a result of death, or may have been the mechanism of death but not the proximate cause of it." (emphasis in original). Dr. Clark further stated:

> [T]he only significant finding of this case is aspiration. I consider it most likely that this aspiration is a result of stresses surrounding death, and not the proximate cause of death. The proximate cause of death remains undetermined. . . . I consider it more likely than not that something in his environment caused his death. The manner of death, therefore, is considered to be accidental.

Lastly, Dr. Clark stated, "[i]t is difficult for me to follow the logic of Dr. Davis' testimony in which an attempt is made to link chronic bronchitis to esophageal reflux in this death. Based on my knowledge of this case I can see no reason that either would be related to his death."

Classifying Dr. Davis' gastroesophageal reflux theory as "speculation," Dr. Harris stated: "It is a tribute to Dr. Davis' chutzpa that he was able, apparently successfully, to throw this obfuscatory handful of sand into the machinery of legal proceedings." Dr. Harris further stated: "I am equally certain that I do not understand why that vomiting and aspiration took place. I would concur with Dr. Clark of Chapel Hill who reached a similar conclusion that the 'bottom line' cause of death remains '[u]ndetermined.' "

The decedent's surviving next of kin properly and timely filed a workers' compensation claim for death benefits with the North Carolina Industrial Commission. The City of Rocky Mount denied the claim on 24 July 1990.

On 9 September 1991 the matter came on for hearing before Deputy Commissioner Roger L. Dillard. On 18 June 1992 Deputy Commissioner Dillard applied the *Pickrell* presumption of compensability and awarded compensation to plaintiffs. On 14 March 1994 the Full Commission affirmed the award of the Deputy Commissioner in a two-to-one decision, Deputy Commissioner Haigh dissenting.

On appeal defendant contends the Industrial Commission improperly applied the *Pickrell* presumption of compensability in awarding compensation to plaintiffs. We disagree.

To recover workers' compensation benefits for death, a claimant must prove that death resulted from an injury "(1) by accident; (2) arising out of his employment; and (3) in the course of the employment." *Harris v. Henry's Auto Parts, Inc.*, 57 N.C. App. 90, 91, 290 S.E.2d 716, 717 *disc. rev. denied*, 306 N.C. 384, 294 S.E.2d 208 (1982) (citation omitted).

In the present case decedent was a traffic light technician. Decedent was repairing a traffic light when the accident occurred, and therefore there is no dispute he was acting within the course of his employment. However, two elements remain, (1) whether the cause of death was "accidental"; and (2) whether the accident arose out of decedent's employment.

The Supreme Court has stated as a general rule: " 'When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of employment.' " *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 367, 368 S.E.2d 582, 584 (1988) (*quoting* 1 Larson, *The Law of Workmen's Compensation* § 10.32 (1985)).

Explaining the nature of this presumption, the *Pickrell* Court indicated: "[T]he presumption is really one of compensability. It may be used to help a claimant carry his burden of proving that death was caused by accident, or that it arose out of the decedent's employment, or both." *Pickrell* at 368, 368 S.E.2d at 585.

At the outset we must determine whether the Industrial Commission correctly invoked the *Pickrell* presumption of compensability.

Defendant contends the introduction of <u>any</u> evidence regarding the two remaining elements, whether the cause of death was accidental, and whether the accident arose out of employment, prevents application of the *Pickrell* presumption of compensability.

According to the *Pickrell* Court, "[W]here the circumstances bearing on work-relatedness are unknown and the death occurs within the course of employment, [plaintiffs] should be able to rely on

a presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown." 322 N.C. at 370, 368 S.E.2d 586.

The present case clearly falls within the category of death benefit cases contemplated by the Supreme Court when it articulated the *Pickrell* presumption of compensability. Decedent was repairing a traffic light when the accident occurred. As indicated in the death certificate, the medical reason for death is known, lack of oxygen to the brain. The aspiration of vomit was most probably the result of the stresses surrounding the death but not the proximate cause of death. The Chief Medical Examiner's office has ruled the manner of death an "accident." Like *Pickrell*, the death occurred within the decedent's course of employment and circumstances bearing on the work-relatedness of his death are unknown. We hold the Industrial Commission correctly invoked the *Pickrell* presumption of compensability.

Having determined the Industrial Commission correctly invoked the *Pickrell* presumption of compensability, the only remaining inquiry is whether defendant proffered sufficient evidence to rebut the presumption.

Consistent with its initial argument, defendant contends the existence of any evidence regarding the two remaining elements, whether the cause of death was accidental, and whether the accident arose out of the decedent's employment, wholly rebuts the *Pickrell* presumption of compensability. We disagree.

Application of the *Pickrell* presumption cannot be properly understood without reference to well settled principles of law concerning the duty and role of the Industrial Commission in workers compensation cases. According to the Supreme Court, "[t]he Workmen's Compensation Act, G.S. § 97-86, vests the Industrial Commission with full authority to find essential facts." *Anderson v. Construction Co.*, 265 N.C. 431, 433, 144 S.E.2d 272, 274 (1965). "The Commission's findings of fact are conclusive on appeal, . . . even if there is evidence which would support a finding to the contrary." *Sanderson v. Northeast Construction Co.*, 77 N.C. App. 117, 121, 334 S.E.2d 392, 394 (1985) (citations omitted). Finally, "the Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683-684 (1982).

The Supreme Court has concluded that the *Pickrell* presumption of compensability is a true presumption. *Pickrell*, 322 N.C. at 371, 368 S.E.2d at 586. As such, "where the claimant is entitled to rely on the presumption, the defendant must come forward with <u>some evidence</u> that death occurred as a result of a non-compensable cause . . . . In the presence of evidence that death was not compensable, the presumption disappears." *Id.* (emphasis added). "If no such evidence is produced, <u>or if the evidence proffered is insufficient for that purpose</u>, the party against whom the presumption operates will be subject to an adverse ruling . . . if the basic fact is found to have been established." *Id.* (emphasis added) (citations omitted); *see* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence*, § 44 (4th ed. 1993) (with true presumptions, "[w]hen the basic fact has been established, the presumed or elemental fact *must* be found unless <u>sufficient</u> evidence of its nonexistence is forthcoming" (footnotes omitted)).

To rebut the *Pickrell* presumption, therefore, the party against whom the presumption operates must produce sufficient, credible evidence that the death is non-compensable.

The Industrial Commission heard testimony presented by defendant's expert that decedent died from the aspiration of gastric contents caused by "gastroesophageal reflux syndrome," a noncompensable idiopathic condition. It also heard testimony presented by plaintiffs' expert witnesses that the cause of death was undetermined. Significantly, the defendant's theory of cause of death was classified as "speculative" by plaintiffs' expert witness, Dr. Harris, and as "difficult . . . to follow" by Associate Chief Medical Examiner Clark. Finally, the conclusion of plaintiffs' expert witnesses was adopted in the final certificate of death issued by the Office of the Chief Medical Examiner for the State of North Carolina. In *Pickrell* the Supreme Court afforded great weight to the conclusions contained in the final certificate of death. *Pickrell*, 322 N.C. at 370, 368 S.E.2d at 586.

As the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Hilliard v. Apex Cabinet Co.*, *supra*, the Industrial Commission found that "the greater weight of the evidence indicates that the decedent died accidentally due to undetermined causes." We conclude the evidence supports the findings of fact of the Industrial Commission and the findings of fact support the conclusions of law based thereon.

To hold, as suggested by defendant, that the introduction of any evidence, no matter how speculative or unpersuasive, wholly deflates the *Pickrell* presumption of compensability is tantamount to repealing the presumption altogether. We therefore conclude the Industrial Commission did not err in determining the evidence proffered by the defendant was insufficient to rebut the *Pickrell* presumption of compensability.

Affirmed.

Chief Judge ARNOLD and Judge JOHNSON concur.