CAROLYN S. SHAW, INDIVIDUALLY, AS ADMINISTRATRIX OF THE ESTATE OF FRANKLIN NEAL
SHAW, AND AS GUARDIAN *AD LITEM* FOR JUSTIN NEAL SHAW AND BENJAMIN TYLER SHAW,
MINOR CHILDREN OF FRANKLIN NEAL SHAW, DECEASED EMPLOYEE, PLAINTIFF V.
SMITH & JENNINGS, INC., SELF-INSURED EMPLOYER, RISCORP, SERVICING AGENT,
DEFENDANT

No. COA97-1123

(Filed 4 August 1998)

### 1. Workers' Compensation— personal comfort doctrine— death in automobile accident

The Industrial Commission did not err by awarding death benefits under the Workers' Compensation Act to the widow of a worker killed in an automobile accident while on a paid morning break where the worker had traveled a short distance from his job site when the accident occurred, there were no facilities for food and drink on the premises, and the employer acquiesced in allowing its employees to go off a job site for the purpose of obtaining refreshments. Activities which are undertaken for the personal comfort of the employee are considered part of the "circumstances" element of the course of employment and the operative principle in determining whether to allow compensation in coffee break cases is whether the employer, in all circumstances, is deemed to have retained authority over the employee, considering the factors in *Roache v. Industrial Com'n of State of Colo.*, 729 P.2d 991.

### 2. Workers' Compensation— *Pickrell* presumption—automobile accident away from workplace

The Industrial Commission did not err by awarding death benefits under the Workers' Compensation Act to the widow of a worker who died in an automobile accident away from the job site on a break where it was determined elsewhere in the opinion that decedent's death was the result of an accident suffered in the course of his employment. Plaintiff was entitled to rely upon the presumption in *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, that the decedent's death arose out of the course of his employment because the autopsy report and the death certificate stated that the cause of death was positional asphyxia resulting from decedent's head being pinned under the truck; although defendant presented testimony that decedent died as a result of dysrhythmia of the heart caused by diabetes, the Commission is the sole judge of credibility and was entitled to establish the cause of

**SHAW v. SMITH & JENNINGS, INC.**

[130 N.C. App. 442 (1998)]

decedent's death and whether it arose out of the course of his employment.

Appeal by defendant from an opinion and award entered 12 June 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 May 1998.

*Ben Farmer for plaintiff-appellee.*

*Lewis & Roberts, P.L.L.C., by Richard M. Lewis and M. Reid Acree, Jr., for defendant-appellant.*

WALKER, Judge.

Plaintiff is the widow of Franklin Neal Shaw (the decedent), who was found dead in his motor vehicle after it was involved in a one-vehicle accident on 2 November 1993. She instituted this claim before the North Carolina Industrial Commission on 16 August 1994 to recover death benefits under the North Carolina Workers' Compensation Act (the Act). Following a hearing, the deputy commissioner issued an opinion and award on 17 October 1996 in which she found that the decedent had "sustained a fatal injury by accident arising out of and in the course of his employment," and awarded death benefits to plaintiff and her two minor children pursuant to N.C. Gen. Stat. § 97-38.

Defendant appealed to the Full Commission (the Commission), whose findings tend to show that on 2 November 1993, the decedent was employed by defendant as a heavy equipment operator. Defendant's business involves the grading and clearing of land and the building of roads. On the date in question, defendant had a job at a subdivision in Davidson County, North Carolina. The decedent's job included operating a pan truck, which is a large vehicle containing a blade used to move large quantities of dirt. During that morning, the decedent was assisting a co-employee, Willard Roberts (Roberts), with the repair of the pan truck. At some point, Roberts was going off the job site to obtain some parts for the pan truck. On his way out, another employee, Ray Hayworth (Hayworth), asked Roberts to bring him a cup of coffee. When Roberts returned to the job site, he realized he had forgotten to get Hayworth's coffee, so he asked the decedent to get the coffee when he saw the decedent leaving the job site.

The decedent left the job site around 10:15 a.m. for one of his scheduled breaks. According to defendant's break policy, each

employee was allowed two ten-minute breaks a day "on the clock," during which the employee continued to be paid by defendant. Further, each employee was allowed a one-hour lunch each day "off the clock," during which the employee was not paid.

At approximately 11:00 a.m., State Trooper C.D. Cain (Trooper Cain) responded to the scene of a one-vehicle accident at the intersection of Johnson Road and Mock Road. Upon his arrival, Trooper Cain observed the decedent's vehicle overturned down an embankment on Johnson Road with the decedent still inside. In addition, Trooper Cain testified that the decedent's "head was on the ground between the cab and the bed with the truck on top of his head," and decedent was not displaying any signs of life. Further, the ambulance call report completed by the EMS personnel who arrived on the scene indicated that "[the decedent] was partially thrown from the vehicle [with the] truck on [the decedent's] head."

An autopsy was performed the next day. The autopsy report indicated that the decedent's vehicle "landed on top of him, pinning him under the truck," and that the most likely cause of death was positional asphyxia, which occurs when the supply of oxygen is cut off and the victim suffocates due to a blockage of the entrance of air into the lungs. Further, the medical examiner's report and the death certificate listed the cause of death as positional asphyxia due to a motor vehicle crash.

The Commission also made the following findings:

11. While the decedent's vehicle was found beyond the store and restaurant frequented by most of his co-workers, the decedent frequented Kelly's Market which was in the vicinity where the truck was found.

12. The decedent was attending to a personal need and was to bring back coffee for a co-worker on 2 November 1993 in leaving the work site on break. However, the employer derived an indirect benefit from this activity. Furthermore, the defendant-employer paid employees during their morning and afternoon breaks, and knew that employees left the work site for snacks and breaks due to the fact that there were no facilities on site.

The Commission then concluded that the decedent sustained a fatal injury by accident arising out of and in the course of his employ-

SHAW v. SMITH & JENNINGS, INC.

[130 N.C. App. 442 (1998)]

ment with the defendant on 2 November 1993 and affirmed the deputy commissioner's award of compensation under N.C. Gen. Stat. § 97-38.

On appeal, defendant contends the Commission erred by awarding death benefits to the plaintiff because it incorrectly concluded that (1) the decedent was acting in the course of his employment at the time of his death, and (2) the decedent's death was causally related to the accident he was involved in on 2 November 1993.

When considering an appeal from the Commission, its findings are binding if there is any competent evidence to support them, regardless of whether there is evidence which would support a contrary finding. *Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996). Therefore, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings, and (2) whether those findings justify its conclusions of law. *Id.*

[1] In order for plaintiff to recover death benefits under the Act, she must prove that the decedent's death resulted from an injury (1) by accident, (2) arising out of his employment with the defendant, and (3) within the course of his employment with the defendant. *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 366, 368 S.E.2d 582, 584 (1988); *see also* N.C. Gen. Stat. § 97-2(6) (Cum. Supp. 1997). An "accident" is "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." *Adams v. Burlington Industries*, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983) (citations omitted). "The term 'arising out of' refers to the origin of the injury or the causal connection of the injury to the employment, while the term 'in the course of' refers to the time, place and circumstances under which the injury occurred." *Schmoyer v. Church of Jesus Christ of Latter Day Saints*, 81 N.C. App. 140, 142, 343 S.E.2d 551, 552, *disc. review denied*, 318 N.C. 417, 349 S.E.2d 600 (1986) (citations omitted). Further, "[w]hether an injury arises out of and in the course of a claimant's employment is a mixed question of fact and law, and our review is thus limited to whether the findings and conclusions are supported by the evidence." *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 481 (1997) (citation omitted).

This Court has held that if the employee's injury is "fairly traceable to the employment" or "any reasonable relationship to employment exists," then it is compensable under the Act. *White v. Battleground Veterinary Hosp.*, 62 N.C. App. 720, 723, 303 S.E.2d 547,

SHAW v. SMITH & JENNINGS, INC.

[130 N.C. App. 442 (1998)]

549, *disc. review denied*, 309 N.C. 325, 307 S.E.2d 170 (1983) (citation omitted). An employee is injured in the course of his employment when the injury occurs "under circumstances in which the employee is engaged in an activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business." *Powers v. Lady's Funeral Home*, 306 N.C. 728, 730, 295 S.E.2d 473, 475 (1982) (citations omitted).

Moreover, "[a]ctivities which are undertaken for the personal comfort of the employee are considered part of the 'circumstances' element of the course of employment." *Spratt v. Duke Power Co.*, 65 N.C. App. 457, 468-469, 310 S.E.2d 38, 45 (1983). In *Rewis v. Insurance Co.*, 226 N.C. 325, 38 S.E.2d 97 (1946), our Supreme Court recognized the personal comfort doctrine by stating that "[a]n employee, while about his employer's business, may do those things which are necessary to his own health and comfort, even though personal to himself, and such acts are regarded as incidental to the employment." *Id.* at 328, 38 S.E.2d at 99 (citations omitted). Further, this Court has held:

[T]he fact that the employee is not engaged in the actual performance of the duties of his job does not preclude an accident from being one within the course of employment. . . .

In tending to his personal physical needs, an employee is indirectly [benefitting] his employer. Therefore, the course of employment continues when the employee goes to the washroom, takes a smoke break, [or] *takes a break to partake of refreshment* . . . .

*Harless v. Flynn*, 1 N.C. App. 448, 456-457, 162 S.E.2d 47, 53 (1968) (emphasis added) (citations omitted).

In addition to employees being compensated for injuries suffered during their lunch breaks, "coffee breaks" or "rest breaks" have increasingly become such a "fixture [in] many kinds of employment," that injuries occurring off the premises during these breaks have been held to be compensable. *See* 1 *Larson's Workers' Compensation Law*, § 15.54 at 4-181 to 4-192 (1997). The operative principle in determining whether to allow compensation in these cases is whether the employer, in all the circumstances, is deemed to have retained authority over the employee. *Id.* If an employer is found to have retained such authority, then the Courts have tended to allow compensation. *Id.*

**SHAW v. SMITH & JENNINGS, INC.**

[130 N.C. App. 442 (1998)]

In making this determination, there are several factors to consider: (1) the duration of the break period; (2) whether the employee is paid during the break period; (3) whether the employer provides a place for employees to take breaks, including vending facilities; (4) whether the employer permits off-premises breaks, or has acquiesced in such despite policies against such breaks; and, (5) the proximity of the off-premises location where the employee was injured to the employment site. *Roache v. Industrial Com'n of State of Colo.*, 729 P.2d 991, 992 (Colo. Ct. App. 1986); *see also* 1 Larson § 15.54 at 4-183.

In *Roache*, the Colorado Court of Appeals reversed the Industrial Commission's denial of benefits to the plaintiff, emphasizing the following determinative factors: since there were no vending facilities on the premises, the employees were expressly permitted to travel off the premises to purchase refreshments; employees were paid during the break period; the break period was of a short duration; the convenience store where plaintiff traveled to was in close proximity to the place of employment; and, the purpose of the employee's visit was "for the basic purpose of rest and refreshment." *Id.* at 992.

Likewise, in this case the decedent was on a paid morning break and had travelled a short distance from the job site when the accident occurred; there were no facilities for food and drink on the premises, and the employer acquiesced in allowing its employees to go off the job site for the purpose of obtaining refreshments. Therefore, we conclude the Commission properly determined the decedent's fatal accident occurred in the course of his employment with the defendant.

[2] Defendant's final assignment of error is that the Commission erred by improperly concluding that the decedent's death arose out of and was causally related to his employment. In *Pickrell*, our Supreme Court announced that "[w]hen an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that death arose out of the employment." *Pickrell v. Motor Convoy, Inc.*, 322 N.C. at 367, 368 S.E.2d at 584 (citation omitted).

Defendant contends that the *Pickrell* presumption only applies in cases where the cause of death is unknown, and in this case, if positional asphyxia is excluded, then cardiac dysrhythmia is the only cause of death. However, the *Pickrell* court stated that the presumption should apply in cases "where the circumstances bearing on work-relatedness are unknown and the death occurs within the

course of employment, . . . whether the medical reason for death is known or unknown." *Id.* at 370, 368 S.E.2d at 586; *see also Melton v. City of Rocky Mount,* 118 N.C. App. 249, 254-255, 454 S.E.2d 704, 708, *disc. review denied,* 340 N.C. 568, 460 S.E.2d 319 (1995).

In *Melton,* this Court was confronted with the issue of whether the Commission properly applied the *Pickrell* presumption. After considering the evidence, this Court held:

> The present case clearly falls within the category of death bene-fit cases contemplated by the Supreme Court when it articulated the *Pickrell* presumption of compensability. Decedent was repair-ing a traffic light when the accident occurred. As indicated in the death certificate, the medical reason for death is known, lack of oxygen to the brain. . . . Like *Pickrell,* the death occurred within the decedent's course of employment and circumstances bearing on the work-relatedness of his death are unknown. We hold the Industrial Commission correctly invoked the *Pickrell* presump-tion of compensability.

*Melton v. City of Rocky Mount,* 118 N.C. App. at 255, 454 S.E.2d at 708. Likewise, we have previously concluded that the decedent's death was the result of an accident suffered in the course of his employment .with the defendant. Further, since the autopsy report and the death certificate state the cause of death was positional asphyxia, the plaintiff is entitled to rely upon the *Pickrell* presump-tion that the decedent's death arose out of the course of his employ-ment with the defendant.

Having determined that the *Pickrell* presumption applies, the question is whether the defendant has produced "sufficient, credible evidence that the death is non-compensable" in order to rebut this presumption. *Id.* at 256, 454 S.E.2d at 709. The defendant presented the testimony of Dr. Arthur E. Davis, a board certified clinical and anatomic pathologist, who stated .that after reviewing all the medical records, the decedent died as the result of a "malignant dysrhythmia of the heart, secondary to severe coronary disease that was caused by the [decedent's] diabetes." However, since the Commission is "the sole judge of the credibility of the witnesses and the weight to be given their testimony," *Id.* at 256, 454 S.E.2d at 709, in weighing all the evidence, the Commission was entitled to establish the cause of the decedent's death and whether it arose out of the course of his employment.

In conclusion, we find the Commission properly awarded plaintiff death benefits as a result of the decedent's fatal accident which arose out of and in the course of his employment with the defendant.

Affirmed.

Chief Judge EAGLES and Judge HORTON concur.