WILLIE MAYFIELD, Employee, Plaintiff v. PARKER HANNIFIN, Employer, Self-Insured, FRANK CATES SERVICING COMPANY, Servicing Agent, Defendant

No. COA04-1646

(Filed 15 November 2005)

### 1. Workers' Compensation— contact with plaintiff's doctor—limited

A workers' compensation defendant is limited to obtaining information from a plaintiff's physician by one of the methods recognized in the rules or as provided by statutes. In this case, defendant improperly sent plaintiff's doctor a facsimile to obtain evidence for use in a hearing without plaintiff's consent, and the doctor's opinions rendered after that date were properly excluded.

### 2. Workers' Compensation— testimony from treating physician—tainted by contact with defendant—excluded

The Industrial Commission did not err in a workers' compensation proceeding by excluding opinions from plaintiff's treating physician after an ex parte contact from defendant. The advocate's language of the facsimile from defendant was designed to affect the answer and the Commission could reasonably find that the opinion was tainted after the fax.

### 3. Constitutional Law— equal protection—restricting defense counsel's contact with treating physician

There was no equal protection violation in a workers' compensation case in barring particular ex parte communications

between defense counsel and treating physicians. Defense counsel and plaintiff's counsel are not similarly situated due to differing confidentiality obligations.

### 4. Workers' Compensation— conflicting medical opinions— weight of evidence—conclusions inconsistent with findings and award

The Industrial Commission was entitled in a workers' compensation case to give greater weight to one of several conflicting medical opinions concerning plaintiff's back injury, and the evidence was sufficient to support the Commission's finding that the plaintiff's leg condition was causally related to his compensable back injury. However, the Commission's conclusions were inconsistent with the findings and the ultimate award (apparently due to clerical error in modifying the Deputy Commissioner's award) and the case was remanded.

### 5. Workers' Compensation— improper contact with doctor— shifting treatment

When a doctor's views have been affected by an improper communication from a defendant, the Industrial Commission is entitled to shift the treatment of plaintiff to another physician.

Appeal by defendant from Opinion and Award filed 28 July 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 August 2005.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Matthew D. Glidewell and M. Duane Jones, for defendant-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Linda Stephens, J. Matthew Little, Season D. Atkinson, and William A. Bulfer, for amicus curiae North Carolina Association of Defense Attorneys.*

GEER, Judge.

Defendant Parker Hannifin appeals from the Industrial Commission's opinion and award granting total disability benefits to plaintiff Willie Mayfield. Defendant argues on appeal that the Full Commission improperly excluded certain evidence from one of plaintiff's treating

physicians after defendant, without plaintiff's consent, sent the physician a facsimile that was copied to plaintiff's counsel. Because we hold that the facsimile violated the principles set out in *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990) and *Salaam v. N.C. Dep't of Transp.*, 122 N.C. App. 83, 468 S.E.2d 536 (1996), *disc. review improvidently allowed*, 345 N.C. 494, 480 S.E.2d 51 (1997), we affirm the Full Commission's exclusion of that evidence. We further hold that, although the Commission's decision is supported by competent evidence, we must remand for further proceedings because of an inconsistency between the findings of fact and conclusions of law.

## Facts and Procedural History

Beginning in 1998, plaintiff worked for defendant as a hose fabricator, a position requiring him to cut and assemble hydraulic hoses. On 11 January 2001, while lifting a hydraulic hose onto a table, plaintiff felt a snapping in his lower back and began experiencing pain in that area. A few days later, he developed numbness in his left leg and left foot. On 19 February 2001, defendant filed a Form 19 that described the incident as involving a lower back injury. On the same date, plaintiff ceased working, and defendant began paying plaintiff temporary total disability benefits.

To address plaintiff's symptoms, defendant referred him to Dr. Chris Guest, a general practitioner. Dr. Guest diagnosed plaintiff with central canal stenosis with a resultant nerve root encroachment. When conservative treatment failed, Dr. Guest referred plaintiff to Dr. Randy O. Kritzer, a neurosurgeon. At plaintiff's first appointment with Dr. Kritzer, on 13 March 2001, plaintiff reported that his back pain had resolved, but that he was continuing to experience numbness in his left leg. Dr. Kritzer diagnosed plaintiff with chronic degenerative spine conditions coupled with spondylosis. Plaintiff received two epidural shots, but then declined further conservative treatment. Because Dr. Kritzer did not believe surgery would be effective, he released plaintiff from his care on 8 May 2001.

Following a recommendation from his rehabilitation nurse, plaintiff requested that Dr. Donald Hertweck, of Triad Internal Medicine Associates, P.A., be designated as his primary treating physician. Defendant agreed, and plaintiff went to his first appointment with Dr. Hertweck on 28 June 2001. He reported continuing pain, heaviness, and numbness in his left foot, although he had no back pain. Dr. Hertweck examined plaintiff and noted that his "symptoms do not correlate with the history of a back injury. . . . At this time, I cannot

correlate his sensation of heaviness and weakness to obvious medical reason. It may still be related to his back."

On 9 July 2001, plaintiff was referred to Dr. Albert K. Bartko III of the Southeastern Orthopaedic Specialist Sports Medicine Center. Dr. Bartko is board certified in physical medicine and rehabilitation. At plaintiff's initial examination with Dr. Bartko, plaintiff reported resolution of his lower back pain, but described pain on the front of his left thigh, knee, and calf. At the time of plaintiff's initial visit, Dr. Bartko indicated in his medical note that it was unusual for plaintiff's leg and foot pain to persist when his lower back pain had resolved. He expressed concern to plaintiff that the leg pain might have a different cause, such as a mini-stroke or diabetes. Dr. Bartko limited plaintiff to sedentary or light duty, with no lifting of more than 15 pounds occasionally and no repetitive bending, twisting, or squatting.

During plaintiff's next three follow-up visits with Dr. Bartko in July and August, plaintiff's leg symptoms showed little to no improvement. On 25 September 2001, plaintiff was terminated from work due to his unavailability for six consecutive months. At that time, plaintiff remained on work restrictions and had not commenced any light duty or rehabilitative employment.

On 26 September 2001, plaintiff reported to Dr. Bartko that his back pain had returned three weeks earlier. Dr. Bartko noted that plaintiff had exhausted conservative treatment options with respect to his back and that plaintiff was not a good surgical candidate. He, therefore, decided that plaintiff had reached maximum medical improvement, assigned a three percent permanent partial disability rating to plaintiff's back, and released plaintiff from his care. He stated in his medical note that he felt plaintiff's leg problems were not causally related to plaintiff's lower back condition and, therefore, not work related. Regarding a return to work, Dr. Bartko expressed the view that if the back symptoms were plaintiff's only problem, he would be capable of returning to sedentary or light duty work with restrictions that took his back condition into account. Given, however, the nature and severity of plaintiff's leg symptoms, Dr. Bartko was doubtful whether plaintiff could realistically even do sedentary to light work.

On 7 November 2001, defendant filed a Form 60, in which defendant admitted plaintiff's right to compensation for a "back strain." The Form 60 confirmed that plaintiff was receiving temporary total disability compensation at a rate of $344.00 per week. On 11 February

2002, plaintiff filed a Form 33 requesting a hearing "[t]o determine compensability and benefits due plaintiff." The case was scheduled for a hearing before Deputy Commissioner Bradley W. Houser on 12 August 2002.

In preparation for the hearing, defendant sent plaintiff a letter on 31 July 2002, informing plaintiff that he was scheduled for a return appointment with Dr. Bartko on 2 August 2002. At 6:38 p.m. on the following day, 1 August 2002, defendant's counsel faxed a letter to Dr. Bartko's office. A note on the facsimile cover sheet said, "Please see that Dr. Bartko receives these documents *before* Mr. Mayfield's 8/2/02 2:15 p.m. appt. Thanks." (Emphasis original.) The faxed letter stated in pertinent part:

> My clients, who are Defendants in the above-captioned workers' compensation claim, have scheduled Mr. Mayfield's August 2, 2002, appointment with you in order to try and answer the following specific questions.
>
> 1. First, as of Mr. Mayfield's August 2, 2002, appointment with you, should Mr. Mayfield be under any work restrictions *strictly pertaining to his back and resulting from his lower back injury of 01/11/01*, considering the fact that he has not worked or presumably undertaken any other strenuous physical tasks since you released him at maximum medical improvement on September 26, 2001?
>
> 2. Is it possible to apportion Mr. Mayfield's overall disability (that is, the sum of all of the factors medically and physically preventing Mr. Mayfield from returning to work as of August 2, 2002) as between the impairment to Mr. Mayfield's lower back resulting from his 01/11/01 back injury and his multiple other complaints and conditions, including his left leg complaints, residual stroke symptoms, heart condition, and other physical conditions? *In other words, can you say what percentage of Mr. Mayfield's inability to return to work is directly attributable to the 3% permanent partial impairment with which you have rated him?*
>
> 3. If it is not possible to apportion Mr. Mayfield's overall disability as between the 3% permanent partial impairment to his lower back, and Mr. Mayfield's other physical and medical complaints and conditions, is the 3% permanent par-

MAYFIELD v. HANNIFIN

[174 N.C. App. 386 (2005)]

tial impairment of Mr. Mayfield's lower back a substantial and material factor in Mr. Mayfield's overall disability?

I would appreciate it if you would answer these three questions in any medical record generated as a result of your August 2, 2002, examination of Mr. Mayfield. I certainly appreciate your time and attention to these questions.

(Emphases original.) Simultaneously, defense counsel faxed a copy of this letter to plaintiff's attorney.

Following plaintiff's appointment, Dr. Bartko responded to the facsimile from defendant's counsel by faxing his office notes to both plaintiff's counsel and defendant's counsel. The office notes specifically addressed the three questions posed by defendant's counsel and stated that the three percent disability rating was assigned for plaintiff's lower back symptoms only and that plaintiff's "inability to work with the restrictions that I have put forth is solely related to his non-work-related problems."

Following the hearing on 12 August 2002 and 4 November 2002, the Deputy Commissioner granted plaintiff's motion for an independent medical examination by Dr. Mark W. Roy, a neurosurgeon. Dr. Roy examined plaintiff on 8 January 2003 and concluded that plaintiff's back strain had caused damage to the nerve running into plaintiff's left leg, which then caused plaintiff's episodic pain in that leg. Dr. Roy further concluded that plaintiff's left leg symptoms were causally related to the back strain that occurred on 11 January 2001.

The Deputy Commissioner filed an opinion and award on 26 September 2003, rejecting plaintiff's contention that Dr. Bartko's testimony was tainted by an improper *ex parte* communication from defendant's counsel and determining that although plaintiff's back injury of 11 January 2001 was compensable, his left lower extremity symptoms were not causally related to his January 2001 injury. The Deputy Commissioner concluded that plaintiff's compensable injury had caused total disability for only the period 19 February 2001 through 26 September 2001.

Plaintiff appealed to the Full Commission. In an opinion and award filed 28 July 2004, the Full Commission modified in part and reversed in part the Deputy Commissioner's decision. The Commission first concluded that defendant's 1 August 2002 contact with Dr. Bartko was improper under *Salaam* and excluded Dr. Bartko's post-1 August 2002 opinions. In addressing the merits of

MAYFIELD v. HANNIFIN

[174 N.C. App. 386 (2005)]

plaintiff's claim, the Full Commission found that as a result of the compensable 11 January 2001 injury by accident, plaintiff had sustained an injury to both his back and his leg. The Commission awarded plaintiff total disability benefits from 11 January 2001 "and continuing until further order of the Commission or plaintiff returns to full time employment subject to the attorney fee awarded herein." The Commission also approved Dr. Roy as plaintiff's primary care physician. Defendant timely appealed the Full Commission's decision to this Court.

## Discussion

Defendant argues three issues on appeal: (1) whether the Commission erred in excluding evidence from Dr. Bartko under *Salaam*, (2) whether competent evidence supports the Commission's finding that plaintiff's left leg condition and continuing disability after 26 September 2001 are causally related to plaintiff's compensable injury, and (3) whether the Commission erred in approving Dr. Roy as plaintiff's treating physician. Defendant has not brought forward in its brief a number of other assignments of error; they are deemed abandoned. N.C.R. App. 28(b)(6).

## Communications Between Defendant and Dr. Bartko

[1] Defendant argues that the faxed communication from defendant to Dr. Bartko on 1 August 2002 did not violate *Crist* and *Salaam* because the communication was not *ex parte* as plaintiff's counsel received a copy. Defendant does not, however, dispute that plaintiff never consented to this communication.

In *Crist*, a medical malpractice case, our Supreme Court upheld a finding by the trial court that defense counsel had acted improperly by talking privately with plaintiff's non-party treating physicians. *Crist*, 326 N.C. at 331, 389 S.E.2d at 44. The Supreme Court concluded that:

[T]he gravamen of the issue is not whether evidence of plaintiff's medical condition is subject to discovery, but by what methods the evidence may be discovered. We conclude that considerations of patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which *ex parte* contacts place the nonparty treating physician supersede defendant's interest in a less expensive and more convenient method of discovery. We thus hold that defense counsel may not interview plaintiff's nonparty treating

> physicians privately without plaintiff's express consent. Defend-
> ant instead must utilize the statutorily recognized methods of dis-
> covery enumerated in N.C.G.S. § 1A-1, Rule 26.

*Id.* at 336, 389 S.E.2d at 47. This Court in *Salaam* held that the prin-
ciples in *Crist* applied equally in the worker's compensation context.
*Salaam,* 122 N.C. App. at 88, 468 S.E.2d at 539. While *Salaam* and
*Crist* both involved oral communications, this Court confirmed in
*Porter v. Fieldcrest Cannon, Inc.,* 133 N.C. App. 23, 30, 514 S.E.2d
517, 523 (1999) that *Crist* and *Salaam* also controlled with respect to
written communications between an employer and the plaintiff's
treating physicians.

Defendant focuses exclusively on the question whether the fac-
simile could be considered an *ex parte* communication. In doing so,
however, it overlooks a fundamental aspect of *Crist.* After holding
that the statutory waiver of the physician/patient privilege addressed
only whether certain information could be disclosed, the Court
observed that "the question remains by what procedures and subject
to what controls the exchange of information shall proceed." *Crist,*
326 N.C. at 334, 389 S.E.2d at 46. The Court then pointed out that
"[o]ther courts have concluded that formal discovery procedures
enable defendants to reach all relevant information while simultane-
ously protecting the patient's privacy by ensuring supervision over
the discovery process, via presence of counsel or judicial interven-
tion, if warranted." *Id.* The Court rejected the defendant's objection
to depositions as being expensive and time-consuming as well as its
objection regarding the tactical advantage given to the plaintiff as
" 'insignificant when compared with the patient-plaintiff's interest in
maintaining the confidentiality of personal and possibly embarrassing
information, irrelevant to the determination of the case being tried.' "
*Id.* at 335, 389 S.E.2d at 46 (quoting *Nelson v. Lewis,* 130 N.H. 106,
111, 534 A.2d 720, 723 (1987)). For that reason, the Court held that
"[d]efendant instead must utilize the statutorily recognized methods
of discovery enumerated in N.C.G.S. § 1A-1, Rule 26." *Id.* at 336, 389
S.E.2d at 47.

In short, *Crist* not only forbid *ex parte* communications between
a defendant and a plaintiff's physician, but also expressly limited the
methods by which a defendant may obtain relevant substantive infor-
mation to statutorily recognized means. The question before this
Court is, therefore, whether defendant's facsimile was a statutorily
authorized method of obtaining information.

In N.C. Gen. Stat. § 97-80 (2003), the General Assembly authorized the Commission to adopt rules providing for and limiting the use of interrogatories and other forms of discovery in workers' compensation cases. In accordance with this authorization, the Commission adopted Rules 605 through 607, governing discovery. Workers' Comp. R. of N.C. Indus. Comm'n 605, 606, & 607, 2005 Ann. R. (N.C.) 935-37. Based on *Crist*, a workers' compensation defendant is limited to obtaining information from a plaintiff's physician by one of the methods recognized in those rules or as provided by other statutes.

Defendants argue that they must be allowed to contact physicians in order to direct medical treatment, to obtain records, or schedule depositions. We note that defendants are entitled by statute to obtain medical records without a plaintiff's consent. N.C. Gen. Stat. § 97-25 (2003) ("[A]n employer paying medical compensation to a provider rendering treatment under this Chapter may obtain records of the treatment without the express authorization of the employee.").[1] While the bare need for other communications cannot trump the fundamental principles set out in *Crist* and *Salaam*, we need not address precisely what non-substantive communications may be permissible since the facsimile at issue in this case cannot by any measure be considered an attempt to direct medical treatment or a non-substantive communication. It was an attempt to obtain evidence for use in the hearing before the Deputy Commissioner.

We also observe that defendant's arguments should, in any event, be presented to the General Assembly. It is for the General Assembly to weigh the policy considerations and determine what methods of disclosure should be permitted. For example, in its most recent session, the General Assembly added N.C. Gen. Stat. § 97-25.6, entitled "Reasonable access to medical information." 2005 N.C. Sess. Laws 4.8, sec. 6.1.

This new subsection of the Workers' Compensation Act provides that "[n]otwithstanding the provisions of G.S. 8-53, any law relating to the privacy of medical records or information, and the prohibition against ex parte communications at common law," an employer or insurer paying medical compensation to a provider rendering treatment under the Workers' Compensation Act may obtain records of that treatment without the express authorization of the employee and, upon written notice to the employee, may obtain directly from the medical provider medical records relating to evalu-

---

1. This provision was moved from N.C. Gen. Stat. § 97-25 to § 97-25.6 by H.B. 99, 2005-2006 Gen. Assem. (N.C. 2005), 2005 N.C. Sess. Laws 448, sec. 6.1.

ation or treatment of the current injury or condition for which the employee is claiming compensation. *Id.* The new N.C. Gen. Stat. § 97-25.6 further provides:

> An employer or insurer paying compensation for an admitted claim or paying without prejudice pursuant to G.S. 97-18(d) may communicate with an employee's medical provider in writing, *limited to specific questions promulgated by the Commission,* to determine, among other information, the diagnosis for the employee's condition, the reasonable and necessary treatment, the anticipated time that the employee will be out of work, the relationship, if any, of the employee's condition to the employment, the restrictions from the condition, the kind of work for which the employee may be eligible, the anticipated time the employee will be restricted, and the permanent impairment, if any, as a result of the condition. When these questions are used, a copy of the written communication shall be provided to the employee at the same time and by the same means as the communication is provided to the provider.

*Id.* (emphasis added). This statute became effective on 29 September 2005 "and appl[ies] to claims pending and filed on or after that date." *Id.* sec. 10.

This amendment provides further support for our conclusion that defendant's facsimile was impermissible. The General Assembly has determined that it is necessary to limit the type of questions that may be asked and to ensure that the questions are neutrally drafted. Significantly, defendant's facsimile in this case would not have been allowed under this statute. Nor does the facsimile fall within any permissible form of discovery. While the questions asked are analogous to interrogatories, there is no discovery provision that authorizes posing interrogatories to a non-party. *See* Workers' Comp. R. of N.C. Indus. Comm'n 605, 2005 Ann. R. (N.C.) 935 ("Interrogatories may, without leave of the Industrial Commission, be served upon any party after the filing of a Form 18, Form 18B, or Form 33, or after approval of Form 21.").

Defendant was required to take Dr. Bartko's deposition in order to obtain the information that it sought by its facsimile. If defendant wished to ensure that Dr. Bartko, in the course of his examination of plaintiff, considered certain topics, it was free to work informally with plaintiff's counsel to agree upon a list of issues to submit to the doctor. As the Supreme Court stated in *Crist,* "[w]e do not intend by

this holding to discourage consensual informal discovery." 326 N.C. at 336, 389 S.E.2d at 47.

Defendant argues alternatively that *Crist* and *Salaam* do not apply because, due to the time elapsed since Dr. Bartko last saw plaintiff, Dr. Bartko was no longer plaintiff's treating physician. This argument cannot be reconciled with defendant's own brief in which it contends that the Commission exceeded its authority in removing Dr. Bartko as the treating physician based on the facsimile communication. That argument presumes Dr. Bartko was plaintiff's treating physician. Further, we can perceive no factual or legal basis for concluding that Dr. Bartko was transformed from a treating physician into a doctor simply performing an independent medical examination.

[2] Defendant next argues that even if the facsimile was improper, the Commission erred in determining that it improperly tainted Dr. Bartko's opinions. Since that assessment involves a factual question, the issue for this Court is whether any evidence exists to support the Commission's finding of taint. Our review of that facsimile indicates that it was not neutrally phrased, but rather was couched in an advocate's language, designed to affect the answer. Defendants, however, point to the fact that Dr. Bartko had already expressed his opinion a year earlier that plaintiff's left leg symptoms were not causally related to the 11 January 2001 injury. The facsimile communication, however, focused on different issues: whether and to what extent plaintiff's back injury contributed to an inability to work. While Dr. Bartko's September 2001 opinion may be read as suggesting that his back injury and left leg condition were combining to result in total disability, Dr. Bartko's August 2002 opinion stated that plaintiff's inability to work was solely related to his non-work-related problems. The Full Commission could reasonably find that this aspect of Dr. Bartko's opinion was tainted.

In sum, because we agree with the Commission that defendant's counsel's facsimile to Dr. Bartko was improper under *Crist* and its progeny, we hold that the Full Commission did not err in excluding from evidence all opinions rendered by Dr. Bartko after 1 August 2002. Therefore, we overrule defendant's assignments of error pertaining to the exclusion of Dr. Bartko's August 2002 evidence.

[3] The North Carolina Association of Defense Attorneys has filed a brief *amicus curiae* in which it argues that barring defense counsel from communicating with treating physicians in the manner at issue

**MAYFIELD v. HANNIFIN**

[174 N.C. App. 386 (2005)]

in this case constitutes a violation of defendants' equal protection rights under the North Carolina and United States constitutions. Although defendant has not pressed this argument, it is in any event without merit. Equal protection requires that "all persons similarly situated be treated alike." *Richardson v. N.C. Dep't of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996). When distinctions are made among those who are similarly situated—but no suspect class or fundamental right is involved—that distinction must only bear a "rational relationship to some legitimate state interest." *Id.*

*Crist* and *Salaam* are founded on the confidential relationship between a patient and his or her physician and the need to protect that relationship. When it comes to protecting the plaintiff's interests in confidentiality, defense counsel and plaintiff's counsel are not similarly situated. Defense counsel is adverse to plaintiff and generally has no obligation to keep information obtained from or regarding plaintiff confidential. On the other hand, plaintiff's counsel is ethically bound to confidentiality, Rev. R. of Prof. Conduct of N.C. State Bar 1.6, 2005 Ann. R. (N.C.) 682, and to zealous advocacy of his or her client's best interests, Rev. R. of Prof. Conduct of N.C. State Bar 0.1[2], 2005 Ann. R. (N.C.) 660. In protecting a patient's privacy, there is not the same need to regulate communications between the patient's attorney and the patient's doctor. Thus, the two groups—defense counsel and plaintiff's counsel—are not in this instance similarly situated. The amicus' policy arguments regarding the possibility that a plaintiff's counsel might improperly affect a doctor's testimony are irrelevant to the pertinent question and should be directed to the General Assembly.

### Causation of Plaintiff's Left Leg Condition

[4] Defendant next contends that the Full Commission erroneously found that plaintiff's left leg condition was causally related to his compensable back injury. Defendant argues that the Full Commission ignored competent evidence, in the form of Dr. Bartko's and Dr. Kritzer's opinions, and relied on incompetent evidence, in the form of Dr. Roy's opinions.

As our Supreme Court has held, "appellate review of an award from the Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004). With respect to the findings of fact, this Court " 'does

not have the right to weigh the evidence and decide the issue on the basis of its weight. The [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "[T]his Court is bound by such evidence, even though there is [other] evidence that would have supported a finding to the contrary." *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980).

Moreover, the Commission is " 'the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Melton v. City of Rocky Mount*, 118 N.C. App. 249, 255, 454 S.E.2d 704, 708 (quoting *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683-84 (1982)), *disc. review denied*, 340 N.C. 568, 460 S.E.2d 319 (1995). For this reason, the Full Commission "may, of course, properly refuse to believe particular evidence. It may accept or reject all or part of the testimony of . . . any . . . witness, and need not accept even uncontradicted testimony." *Pitman v. Feldspar Corp.*, 87 N.C. App. 208, 216, 360 S.E.2d 696, 700 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988).

Defendant argues first that the Commission failed to consider the evidence of Dr. Bartko and Dr. Kritzer. The Commission, however, specifically found that Dr. Kritzer was unable to testify to a reasonable degree of medical certainty regarding any causal relationship between plaintiff's left leg complaints and his 11 January 2001 injury. With respect to Dr. Bartko, the Commission included five findings of fact reciting Dr. Bartko's treatment of plaintiff and his opinions prior to August 2002. The Commission then found: "Regarding the causation opinions given in this matter, the Full Commission gives greater weight to the opinions given by Dr. Roy, than the opinions of Dr. Bartko and Dr. Kritzer."

Thus, the Commission was faced with conflicting opinions and it chose, as it was entitled to do, to give greater weight to Dr. Roy's opinion. We note that defendant's counsel indicated that he had "[n]o objection" when plaintiff's counsel tendered Dr. Roy as a "board certified expert in neurosurgery." Dr. Roy then testified that, in his opinion, to a reasonable degree of medical certainty, plaintiff's complaints regarding his back and left leg were related both to his work-related injury and to congenital and degenerative defects. He could not, however, apportion between the two. He indicated that he was "not really

too disturbed" by the fact plaintiff sometimes presented with leg pain and no back pain because he observed that with patients "relatively commonly." Dr. Roy stated that, in his opinion, plaintiff exacerbated or aggravated his pre-existing spondylosis or stenosis when he lifted the hose on 11 January 2001 and, at that time, also irritated or damaged the nerve going into his left leg. This evidence is sufficient to support the Commission's finding that plaintiff's left leg condition was caused by his 11 January 2001 injury by accident. *See Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 390, 465 S.E.2d 343, 345 (holding that an employee is entitled to total disability when a combination of non-compensable illnesses and a work-related shoulder injury rendered her incapable of working), *disc. review denied*, 343 N.C. 305, 471 S.E.2d 68 (1996).

Defendant's arguments on appeal regarding Dr. Roy go to questions of credibility and weight. While defendant points to portions of Dr. Roy's testimony that it believes support its position or suggest speculation, this Court has previously noted that "[c]ontradictions in the testimony go to its weight . . . ." *Harrell v. J. P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. review denied*, 300 N.C. 196, 269 S.E.2d 623 (1980). Further, as Judge Hudson stated in a dissenting opinion adopted by the Supreme Court in *Alexander v. Wal-Mart Stores, Inc.*, 359 N.C. 403, 610 S.E.2d 374 (2005) (per curiam), it is not "the role of this Court to comb through the testimony and view it in the light most favorable to the defendant, when the Supreme Court has clearly instructed us to do the opposite. Although by doing so, it is possible to find a few excerpts that might be speculative, this Court's role is not to engage in such a weighing of the evidence." *Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting).

Accordingly, the Commission's findings of fact regarding causation are supported by competent evidence and, therefore, conclusive on appeal. When, however, we turn to the Commission's conclusions of law, they are not consistent with either the findings of fact or the ultimate award.

The Commission made the following findings of fact.

5. . . . Dr. Kritzer was unable to testify to a reasonable degree of medical certainty regarding any causal relationship between plaintiff's left leg and left lower extremity complaints and his back injury of 11 January 2001.

. . . .

11. ... Dr. Bartko opined that plaintiff's left leg and left lower extremity symptoms were not causally related to any back condition, work-related, congenital, degenerative, or otherwise. ...

. . . .

15. On the issue of causation, Dr. Roy opined that plaintiff's left leg and left lower extremity symptoms were causally related to his 11 January 2001 injury by accident. ...

. . . .

18. Regarding the causation opinions given in this matter, the Full Commission gives greater weight to the opinions given by Dr. Roy, than the opinions of Dr. Bartko and Dr. Kritzer. ...

In other words, as discussed above, the Commission found that plaintiff's left leg condition was caused by the 11 January 2001 accident.

The Commission's conclusions of law, however, include the following:

3. On 11 January 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6). As the result of his 11 January 2001 injury by accident, plaintiff sustained an injury to his back. *Id.* However, based upon the credible lay and medical evidence of record, plaintiff's left leg and lower left extremity symptoms *are not the natural result of, or causally related to his 11 January 2001 injury by accident.* ...

4. As the result of his 11 January 2001 injury by accident, plaintiff is entitled to have defendant pay total disability compensation at the rate of $365.12 per week *for the period of 19 February 2001 through 26 September 2001.* ...

5. Plaintiff is entitled to be paid permanent partial disability compensation for the three percent (3%) rating assigned to his back. N.C. Gen. Stat. §97-31(23).

(Emphases added.)

On the other hand, the Commission's Award states:

1. Defendant shall pay for all related medical expenses incurred as a result of [plaintiff's] 11 January 2001 injury by accident, *including treatment for plaintiff's left leg.*

2. Defendant shall pay plaintiff temporary total disability benefits at a weekly rate of $365.12 per week *from 11 January 2001 and continuing* until further order of the Commission or plaintiff returns to full time employment subject to the attorney fee awarded herein.

(Emphases added.)

Based upon our review of the record, it appears that the Full Commission modified the Deputy Commissioner's findings of fact and award in order to allow compensation for the leg condition and total disability after 26 September 2001, but that the Commission did not also modify the conclusions of law. While we recognize that this may be a mere clerical error, we must nonetheless reverse and remand to allow the Commission to resolve the inconsistencies. *See Hollar v. Montclair Furniture Co.*, 48 N.C. App. 489, 497, 269 S.E.2d 667, 672 (1980) (reversing and remanding to the Full Commission for further proceedings, after holding that the Commission's findings of fact did not justify its conclusions of law).

## Approval of Dr. Roy as Primary Care Physician

[5] Finally, defendant argues that the Commission erred in approving Dr. Roy as plaintiff's primary care physician. Defendant notes that the Commission found that "plaintiff's relationship with Dr. Bartko was so compromised by defendant's communication that plaintiff can no longer continue as plaintiff's treating physician. The Full Commission approves Dr. Roy as plaintiff's treating physician." Defendant argues that this was in effect a remedy for the *ex parte* communication and that "[t]here is no case law even suggesting the removal of a physician as authorized treating physician as a remedy for an *ex parte* communication between a defendant and a treating physician." Additionally, defendant contends that the Commission failed to make findings of fact regarding how plaintiff's relationship with Dr. Bartko was compromised.

The Commission's decision to approve a doctor as an employee's treating physician is reviewed for an abuse of discretion. *Lakey v. U.S. Airways, Inc.*, 155 N.C. App. 169, 174, 573 S.E.2d 703, 707 (2002), *disc. review denied*, 357 N.C. 251, 582 S.E.2d 271 (2003). Since the Commission's findings of fact are adequate for us to determine the basis for the Commission's decision, we need not remand for further findings.

When the Commission decides, as here, that a doctor's views have been affected by an improper communication from a defendant, the Commission is entitled to shift the treatment of the plaintiff to another physician. Moreover, the Commission's decision in this case is supported by the Commission's findings that Dr. Bartko had released plaintiff from his care, but plaintiff was still experiencing pain. *See, e.g., Terry v. PPG Indus., Inc.*, 156 N.C. App. 512, 520, 577 S.E.2d 326, 332-33 (holding that the Commission did not abuse its discretion in approving treatment by a particular physician when none of the other authorized physicians had successfully provided relief for her condition), *disc. review denied*, 357 N.C. 256, 583 S.E.2d 290 (2003); *Lakey*, 155 N.C. App. at 174, 573 S.E.2d at 707 ("[P]laintiff was released to work by her approved physician while still suffering from pain. Therefore, we do not find that the Commission abused its discretion in allowing approval of plaintiff's physician."). Thus, no basis exists to overturn the Commission's decision to approve Dr. Roy as plaintiff's primary care physician.

Affirmed in part, reversed and remanded in part.

Chief Judge MARTIN and Judge BRYANT concur.