Window World of Baton Rouge, LLC v. Window World, Inc.; Window World of St. Louis, Inc. v. Window World, Inc., 2018 NCBC 130.

STATE OF NORTH CAROLINA

WILKES COUNTY

WINDOW WORLD OF BATON ROUGE, LLC; WINDOW WORLD OF DALLAS, LLC; WINDOW WORLD OF TRI STATE AREA, LLC; and JAMES W. ROLAND,

Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1

**ORDER AND OPINION ON WINDOW WORLD, INC.'S MOTION TO COMPEL NET WORTH INFORMATION**

WILKES COUNTY

15 CVS 2

WINDOW WORLD OF ST. LOUIS, INC.; WINDOW WORLD OF KANSAS CITY, INC.; WINDOW WORLD OF SPRINGFIELD/PEORIA, INC.; JAMES T. LOMAX III; JONATHAN GILLETTE; B&E INVESTORS, INC.; WINDOW WORLD OF NORTH ATLANTA, INC.; WINDOW WORLD OF CENTRAL ALABAMA, INC.; MICHAEL EDWARDS; MELISSA EDWARDS; WINDOW WORLD OF CENTRAL PA, LLC; ANGELL P. WESNERFORD; KENNETH R. FORD, JR.; WORLD OF WINDOWS OF DENVER, LLC; RICK D. ROSE; CHRISTINA M. ROSE; WINDOW WORLD OF ROCKFORD, INC.; WINDOW WORLD OF JOLIET, INC.; SCOTT A. WILLIAMSON; JENNIFER L. WILLIAMSON; BRIAN C. HOPKINS; WINDOW WORLD OF

LEXINGTON, INC.; TOMMY R. JONES; JEREMY T. SHUMATE; WINDOW WORLD OF PHOENIX LLC; JAMES BALLARD; and TONI BALLARD,

        Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH, individually and as trustee of the Tammy E. Whitworth Revocable Trust,

        Defendants.

1.    **THIS MATTER** was first brought before the Court through Defendant Window World, Inc.'s ("Window World") Business Court Rule 10.9 request submitted via email on October 9, 2018 (the "BCR 10.9 Request"). Although Window World has not filed a formal motion to compel discovery, the Court and the parties have treated the BCR 10.9 Request as a motion to compel discovery at all times after the Court's order for supplemental briefing on October 22, 2018, and the parties have submitted supplemental briefs at the Court's direction referencing Window World's "Motion to Compel." Therefore, the Court, in the exercise of its discretion, hereby formally converts the BCR 10.9 Request into a motion to compel discovery under Rule 37 of the North Carolina Rules of Civil Procedure and deems this matter to be before the Court upon Window World's Motion to Compel Net Worth Information (the "Motion") in the above-captioned cases.

2.       Having considered the BCR 10.9 Request, the parties' statements in support of and in opposition to the BCR 10.9 Request, the arguments of counsel at the October 22, 2018 telephone conference on the BCR 10.9 Request, the parties' supplemental briefs in support of and in opposition to the Motion, and the arguments of counsel at the November 13, 2018 hearing on the Motion, the Court, in the exercise of its discretion and for good cause shown, hereby rules upon the Motion as set forth below.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Charles E. Coble, Robert J. King III, Benjamin R. Norman, Jeffrey E. Oleynik, and Andrew L. Rodenbough, and Keogh Cox & Wilson, Ltd., by Richard W. Wolff, John P. Wolff, III, and Virginia J. McLin, for Plaintiffs Window World of Baton Rouge, LLC, Window World of Dallas, LLC, Window World of Tri State Area LLC, James W. Roland, Window World of St. Louis, Inc., Window World of Kansas City, Inc., Window World of Springfield/Peoria, Inc., James T. Lomax III, Jonathan Gillette, B&E Investors, Inc., Window World of North Atlanta, Inc., Window World of Central Alabama, Inc., Michael Edwards, Melissa Edwards, Window World of Central PA, LLC, Angell P. Wesnerford, Kenneth R. Ford, Jr., World of Windows of Denver, LLC, Rick D. Rose, Christina M. Rose, Window World of Rockford, Inc., Window World of Joliet, Inc., Scott A. Williamson, Jennifer L. Williamson, Brian C. Hopkins, Window World of Lexington, Inc., Tommy R. Jones, Jeremy T. Shumate, Window World of Phoenix LLC, James Ballard, and Toni Ballard.*

*Manning, Fulton & Skinner, P.A., by Michael T. Medford, Judson A. Welborn, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner & Goode LLC, by Mark M. Leitner, Joseph S. Goode, Jessica L. Farley, Sarah E. Thomas Pagels, and John W. Halpin, for Defendants Window World, Inc. and Window World International, LLC.*

*Bell, Davis & Pitt, P.A., by Andrew A. Freeman and Alan M. Ruley, for Defendant Tammy Whitworth.*

Bledsoe, Chief Judge.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     The pertinent procedural and factual background of these matters is set out more fully in *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2018 NCBC LEXIS 102 (N.C. Super. Ct. Sept. 28, 2018), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2018 NCBC LEXIS 100 (N.C. Super. Ct. Sept. 26, 2018), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60 (N.C. Super. Ct. July 12, 2017), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2016 NCBC LEXIS 82 (N.C. Super. Ct. Oct. 25, 2016), and *Window World of St. Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79 (N.C. Super. Ct. Aug. 10, 2015). The Court recites only those facts necessary for its determination of the Motion.

4.     Window World is in the business of selling and installing windows, doors, and siding. It operates several store locations and also franchises its business around the country. Plaintiffs in these actions are various Window World franchisees and franchisee owners, and have divided themselves into separate groups (the "Plaintiff Groups").

5.     Plaintiffs allege that they entered into franchise agreements with Window World beginning in 2001. Plaintiffs' claims against Window World for fraud, unjust enrichment, and unfair or deceptive trade practices under Chapter 75 rest, in part, on Plaintiffs' contention that Window World failed to provide Franchise Disclosure Documents (the "FDDs") to Plaintiffs despite a legal obligation to do so under the Federal Trade Commission's (the "FTC" or "Commission") Franchise Disclosure Rule.

*See* 16 C.F.R. § 436.2.  It is undisputed that Window World did not provide FDDs to Plaintiffs prior to October 2011.  The parties dispute, however, whether certain Plaintiffs were subject to the Large Franchise Exemption ("LFE") to the Franchise Disclosure Rule, which excuses a franchisor's obligation to provide an FDD if certain conditions—including a net worth threshold—are met.  *See id.* § 436.8(a)(5)(ii).

6.     On June 13, 2018, Window World served interrogatories (the "Net Worth Interrogatories")[1] on each Plaintiff Group seeking, among other things, the "individual net worth" of each individual Plaintiff (the "Individual Plaintiffs") for each year between 2001 and 2018.  (*See* Goode Aff. Exs. A–H, ECF No. 635.1–635.8 (15 CVS 1), ECF No. 672.1–672.8 (15 CVS 2).)  The Net Worth Interrogatories also seek the "total liabilities, as well as the book value and fair market value of the total assets" of (i) each corporate Plaintiff (the "Corporate Plaintiffs"), (ii) twelve specified non-party entities (the "Specified Non-Party Entities"),[2] and (iii) "any Affiliate or Parent" of each Corporate Plaintiff and of each Specified Non-Party Entity (the "Unspecified Non-Party Entities" and, together with the Specified Non-Party Entities, the "Non-Party Entities") for each year that any such entity has existed.

---

[1]  Specifically at issue are interrogatories 1–5 to North Atlanta/Central Alabama/Edwards; interrogatories 1–5 and 7 to Baton Rouge/Dallas/Tri State/Roland; interrogatories 1–4 to Denver/Rose; interrogatories 1–6 to Lexington/Jones/Shumate; interrogatories 1–5 to Phoenix/Ballard; interrogatories 1–5 to Joliet/Williamson/Hopkins; interrogatories 1–7 to St. Louis/Kansas City/Springfield/Peoria/Lomax/Gillette; and interrogatories 1–4 to Central PA/Ford.  (*See* Goode Aff. Exs. A–H, ECF No. 635.1–635.8 (15 CVS 1), ECF No. 672.1–672.8 (15 CVS 2).)

[2]  The Specified Non-Party Entities include Builders Windows, LLC, Window World of Tampa, LLC, W Distributors, LLC, R.C. Rose Enterprises, T. Jones LLC, Window World of Queen City, Inc., Jones and Shumate, LLC, Professional Sales Services of Phoenix, LLC, the JTB Family Trust, Elizabethdawn, Inc., WW STL Holdings, LLC, and RAF Investments.

(*See* Goode Aff. Exs. A–H). Plaintiffs served various objections to the Net Worth Interrogatories on August 13, 2018.

7. On October 9, 2018, Window World submitted the BCR 10.9 Request, seeking an order compelling Plaintiffs to respond to the Net Worth Interrogatories. The Court held a BCR 10.9 telephone conference on October 22, 2018, and thereafter, in accordance with BCR 10.9(b)(1), ordered the parties to submit supplemental briefs addressing whether the LFE is relevant to the matters at issue in this litigation.

8. The Court held a hearing on the Motion on November 13, 2018, at which all parties to these actions were represented by counsel. The Motion is ripe now for resolution.

II.

LEGAL STANDARD

9. "The primary purpose of the discovery rules is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 805 S.E.2d 664, 667 (N.C. 2017) (emphasis omitted) (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688–89 (1992)). To that end, North Carolina Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. R. Civ. P. 26(b)(1). "To be relevant for purposes of discovery, the information [sought] need only be 'reasonably calculated' to lead to the discovery of admissible

evidence." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978); *see* N.C. R. Civ. P. 26(b)(1). While Rule 26 should be construed liberally, our Supreme Court has cautioned that the Rules of Civil Procedure should not be interpreted to allow parties "to roam at will in the closets of . . . other[s]." *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976).

10. Under Rule 33 of the North Carolina Rules of Civil Procedure, "[a]ny party may serve upon any other party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association . . ., by any officer or agent, who shall furnish such information as is available to the party." N.C. R. Civ. P. 33(a).

11. "The party resisting discovery bears the burden of showing why the motion to compel should not be granted." *Nat'l Fin. Partners Corp. v. Ray*, 2014 NCBC LEXIS 50, at *26 (N.C. Super. Ct. Oct. 13, 2014). "Whether or not the party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 433, 617 S.E.2d 664, 668 (2005).

## III.

## ANALYSIS

12. Window World contends that the Net Worth Interrogatories are reasonably calculated to lead to the discovery of admissible evidence concerning whether Window World was obligated to provide FDDs to Plaintiffs. According to Window World,

discovery of the net worth of Plaintiffs and the Non-Party Entities is necessary to assess the applicability of the LFE to the Franchise Disclosure Rule.[3]

13.   In opposition to the Motion, Plaintiffs argue that (i) the Net Worth Interrogatories exceed the numeric limit for interrogatories set forth in the Court's June 15, 2015 Case Management Order (the "CMO"); (ii) the net worth of all Plaintiffs and Non-Party Entities is irrelevant because Window World cannot retroactively invoke the LFE; (iii) the Net Worth Interrogatories are overbroad and compliance would be unduly burdensome; (iv) in any event, the LFE is applicable only to business entities, not to persons like the Individual Plaintiffs; and (v) to the extent the LFE is applicable to the Corporate Plaintiffs, Plaintiffs have produced balance sheets for those entities which are fully sufficient to determine their net worth.  Plaintiffs also object to the Court's consideration of two affidavits that Window World filed in connection with the Motion.

14.   The Court first addresses Plaintiffs' objection to Window World's affidavit testimony.  Plaintiffs argue that the affidavits of Ann Hurwitz ("Ms. Hurwitz"), tendered as a franchising expert, and Catharine M. Lawton ("Ms. Lawton"), tendered as an expert on financial and economic issues, should be stricken because they offer

---

[3] This Court briefly addressed the LFE in dicta in its September 26, 2018 Order and Opinion on a prior Window World motion to compel that sought the Individual Plaintiffs' tax returns. *See Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at \*25–27.  The Court denied Window World's request, reasoning, in part, that "the Window World Defendants have not demonstrated that the information they seek cannot be obtained by less burdensome and invasive means." *Id.* at \*26.  The Court noted that "the Window World Defendants recently served interrogatories seeking information related to Plaintiffs' net worth," *id.*, but did not consider whether the Individual Plaintiffs' net worth was discoverable for purposes of the LFE.

argument that, when combined with Window World's opening brief, greatly exceeds the 2,000 word limit the Court set for opening briefs at the October 22, 2018 conference. (*See* Lawton Aff., ECF No. 636 (15 CVS 1), ECF No. 673 (15 CVS 2); Hurwitz Aff., ECF No. 634 (15 CVS 1), ECF No. 671 (15 CVS 2).)

15. Ms. Hurwitz is a long-time partner with a prominent international law firm in Chicago, Illinois and represents that she has a particular expertise in franchising law. She is admitted to the North Carolina State Bar but is currently on inactive status. Ms. Hurwitz is not counsel of record for any party to this action. Her affidavit contains nearly 3,000 words, and the substantial majority of the affidavit contains legal arguments in support of the Motion. As a practical matter, Ms. Hurwitz's affidavit serves as a supplemental brief, albeit from counsel who has not been admitted *pro hac vice* in this action, and, when combined with Window World's opening brief, results in initial briefing well in excess of the Court-ordered word limits. The Court will therefore strike Ms. Hurwitz's affidavit and not consider it on this Motion.[4]

16. The Court reaches a different conclusion, however, as to Ms. Lawton's affidavit. Window World tenders Ms. Lawton as an expert on financial and economic issues. Rather than advancing legal arguments, Ms. Lawton's affidavit offers opinion

---

[4] The Court's ruling on Ms. Hurwitz's affidavit is limited to this Motion and without prejudice to Window World's right to seek to offer Ms. Hurwitz as an expert witness at a later stage of this litigation. The Court is mindful, however, that our appellate courts have held that "while the legal expert may testify regarding the factual issues facing the jury, [she] is not allowed to either interpret the law or to testify as to the legal effect of particular facts." *Smith v. Childs*, 112 N.C. App. 672, 680, 437 S.E.2d 500, 506 (1993); *see, e.g.*, *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 9 (2007) ("Expert testimony is an improper mechanism for offering legal arguments to the Court.").

testimony as to the accounting and valuation standards to be applied in calculating the net worth of the Corporate Plaintiffs based on her review of the currently available information as to each of the Corporate Plaintiffs. (*See* Lawton Aff. ¶ 18 ("[I]t is my opinion that the book value of the equity reported on corporate balance sheets standing alone is not a reliable indicator of the net worth of affiliated parties (owners and/or affiliated companies).").) Therefore, the Court will not strike Ms. Lawton's affidavit in connection with the current Motion. *See Franks v. Franks*, 153 N.C. App. 793, 796, 571 S.E.2d 276, 278 (2002) ("We hold that the trial court properly relied upon the testimony of [an expert in forensic accounting and business valuation] to determine valuation of the painting business.").

17. The Court turns next to Plaintiffs' contention that the Motion should be denied because Window World has exceeded the CMO's numerical limit on Common Interrogatories. The CMO incorporates the parties' agreement and provides that they "shall be allowed to serve no more than the number of interrogatories set forth in" the Case Management Report (the "CMR"). (Case Management Order 4 [hereinafter "CMO"], ECF No. 50 (15 CVS 1), ECF No. 64 (15 CVS 2).) The CMR provided that interrogatories were to be divided into two categories, each of which was subject to a separate numerical limit. (Case Management Report 9 [hereinafter "CMR"], ECF No. 47 (15 CVS 1), ECF No. 61 (15 CVS 2).) First, Plaintiffs, collectively, and Defendants, collectively, were allotted forty "Common Interrogatories," which the parties agreed, and the Court ordered, are "interrogatories asking the same question to all of the Plaintiffs or to all of the Defendants." (CMR 9.) Under the CMR,

"Common Interrogatories served by Defendants to all Plaintiffs (asking the same question to all Plaintiffs) are considered Common Interrogatories even though individual Plaintiff Groups may serve different answers to the Common Interrogatories." (CMR 10.) Second, the parties agreed, and the Court ordered, that each Plaintiff Group and Defendants, collectively, would be allowed a certain number of "Individualized Interrogatories" that were "not to be used for inquiry into facts and issues common to all Plaintiff Groups." (CMR 10.) While Defendants have reached the limit on Common Interrogatories, they have not reached the limit on Individualized Interrogatories.

18. Plaintiffs contend that the Net Worth Interrogatories are Common Interrogatories, and not Individualized Interrogatories, because they ask the same question of every Plaintiff Group and inquire into facts (i.e. net worth) and an issue (i.e. the applicability of the LFE) common to all Plaintiff Groups. The Court substantially agrees. The Net Worth Interrogatories concerning the Individual Plaintiffs, the Corporate Plaintiffs, and the Unspecified Non-Party Entities ask the same exact questions to each Plaintiff Group and inquire into facts common to each Plaintiff Group. Thus, they fall within the definition of Common Interrogatories under the CMO.

19. As is frequently the case, the CMR on which the CMO is based reflected an agreement between the parties that was the product of negotiation and compromise. Plaintiffs have conducted discovery within the framework of that agreement and have a reasonable expectation that Window World will be required to abide by its terms.

Window World has not moved to amend the CMO to increase the number of Common Interrogatories that it could serve, nor has it offered any explanation for its failure to better utilize the forty Common Interrogatories that it agreed would be sufficient for purposes of this litigation. Moreover, the additional time and expense associated with responding to the Net Worth Interrogatories would be substantial, and to require Plaintiffs to do so late in the discovery period would work significant inconvenience and cause undue burden. Accordingly, the Court, in the exercise of its discretion, concludes that the Motion should be denied to the extent it seeks to compel responses to the Net Worth Interrogatories as to the Individual Plaintiffs, the Corporate Plaintiffs, and the Unspecified Non-Party Entities because Defendants have previously posed all of the Common Interrogatories permitted under the CMO.

20. In contrast, the Net Worth Interrogatories concerning the Specified Non-Party Entities are addressed only to a subset of the Plaintiff Groups. Thus, by the plain terms of the CMO, these interrogatories are not Common Interrogatories and are properly posed as Individualized Interrogatories. Because Defendants have a sufficient number of Individualized Interrogatories available under the CMO to pose the Net Worth Interrogatories concerning the Specified Non-Party Entities, the Court will not deny the Motion for procedural deficiency as to these interrogatories.

21. The Court next addresses Plaintiffs' substantive objections to the Net Worth Interrogatories. The Court will examine these objections not only as to the Specified Non-Party Entities, but also as to the Individual Plaintiffs and the Corporate

Plaintiffs because certain objections provide an additional basis for denial of the Motion as to these parties and entities.

22.    The Franchise Disclosure Rule provides that, "[i]n connection with the offer or sale of a franchise," a franchisor must "furnish a prospective franchisee with a copy of the franchisor's current [FDD] at least 14 calendar-days before the prospective franchisee signs a binding agreement with, or makes any payment to, the franchisor or an affiliate in connection with the proposed franchise sale."  16 C.F.R. § 436.2(a). The Rule further provides that at least seven calendar-days before "alter[ing] unilaterally and materially the terms and conditions of the basic franchise agreement or any related agreements attached" to the FDD, a franchisor must "furnish[] the prospective franchisee with a copy of each revised agreement[.]"  *Id.* § 436.2(b).  Rule 436 is "tailored to address the prevalent franchisor nondisclosure of material information" to prospective franchisees.  72 Fed. Reg. 15,453 (Mar. 30, 2007).

23.    The LFE relieves a franchisor of its obligation to provide a prospective franchisee with a FDD where "the franchisor can establish [that t]he franchisee (or its parent or any affiliates) is an entity that has been in business for at least five years and has a net worth of at least $5,715,500."  16 C.F.R. § 436.8(a)(5)(ii).  The Court's research has not disclosed, and the parties have not cited, any judicial or administrative decisions interpreting the LFE; however, the FTC's Statement of Basis and Purpose (the "FTC's Statement") accompanying the 2007 amendments[5] provides some useful guidance.  *Cf. Jones v. Keller,* 364 N.C. 249, 261, 698 S.E.2d 49,

---

[5]  The FTC first adopted the LFE in 2007.

59 (2010) (noting that courts must "give controlling weight to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulation[s]"). In particular, the FTC's Statement notes that the LFE was created because "large entities negotiating franchise deals—such as airports, hospitals, and universities—can obtain the benefits of the amended Rule without federal government intervention." 72 Fed. Reg. 15,527. According to the FTC, "[s]uch transactions often are heavily negotiated by sophisticated counsel who have significant experience in the franchise industry." *Id.*

24. The parties agree that Window World made no effort to assess the applicability of the LFE at the time the franchise agreements at issue in this litigation were entered. The parties further agree that in October 2011, Window World sent letters to Plaintiffs in which Window World acknowledged that it "failed to comply with Federal and State Laws by presenting to [Plaintiffs] a Franchise Disclosure Document" prior to the purchase of their respective franchises. (Pls.' Br. Opp'n Mot. Compel Net Worth Info. Ex. A, ECF No. 626.2 (15 CVS 1), ECF No. 663.2 (15 CVS 2).)

25. Plaintiffs first contend that the LFE, by its terms, applies only if Window World can establish the LFE's applicability at the time disclosures would otherwise have been due, and thus that Window World cannot raise the LFE now in defense of Plaintiffs' state law claims. As a result, Plaintiffs claim that the net worth of Plaintiffs and the Non-Party Entities is irrelevant. The Court disagrees.

26.    Plaintiffs have asserted state law claims against Window World for fraud, unjust enrichment, and unfair or deceptive trade practices that rest, in part, on their contention that Window World failed to provide FDDs despite a legal obligation to do so.  Plaintiffs are not suing to obtain FDDs or to otherwise vindicate rights under the Federal Disclosure Rule, but rather to advance state law claims based on Window World's failure to follow the Rule no earlier than October 2011.  Thus, Plaintiffs' claims place at issue whether Window World had an obligation to provide FDDs to Plaintiffs.  Nothing in the Rule, the LFE, or the FTC's Statement suggests that Window World has waived its right to mount a defense to those state law claims by arguing that the LFE excused its failure to provide FDDs during the relevant time period.  That the LFE is typically invoked and established prior to the entry of a franchise agreement through consideration of the information provided in the application process, as Plaintiffs contend, does not mean that a franchisor cannot show that the LFE exemption applied when the franchisor's failure to provide a FDD is challenged by a franchisee through the assertion of state law claims.

27.    A comparison of the LFE with the Large Investment Exemption ("LIE"), *see* 16 C.F.R. § 436.8(a)(5)(i), supports this view.  Unlike the LFE, the LIE requires a "prospective franchisee [to] sign[] an acknowledgment verifying the grounds for the exemption." *Id.*  Had the FTC intended to require any invocation of the LFE to occur prior to entry into an agreement, the FTC could have included a similar requirement under the LFE.  Accordingly, Window World's Motion will not be denied on this basis.

28.    Plaintiffs next contend that the Individual Plaintiffs' net worth and prior experience cannot be considered in assessing the applicability of the LFE because they conduct business through business entities.  Although the LFE provides in relevant part that it applies when "[t]he franchisee (or its parent or any affiliates) is an entity," *id.* § 436.8(a)(5)(ii), the term "entity" is not defined in Rule 436, *see id.* § 436.1.  Footnote 845 to the FTC's Statement does not define "entity" but does provide as follows:

> Nothing prevents an "entity" under this provision from being an individual, but most individuals who have been in business for at least five years and have generated an individual net worth of at least $5 million[6] are likely to have created a corporation or other formal organization through which to conduct business.

72 Fed. Reg. 15,527 n.845.   Plaintiffs argue that footnote 845 means that an individual is deemed an "entity" under the LFE only if the individual has not created a corporation or other organization through which to conduct business.

29.    In interpreting a regulation, a court must seek to determine the promulgating agency's intent.  *See Morrell v. Flaherty*, 338 N.C. 230, 238, 449 S.E.2d 175, 180 (1994); *see also Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) ("The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.").

30.    Turning to the language at issue, the first clause of footnote 845 makes clear that an "entity" may be an individual.  More challenging is discerning the FTC's

---

[6] The FTC raised the net worth threshold from $5,000,000 to $5,424,500 effective July 1, 2012, and to the current threshold, $5,715,500, effective July 1, 2016.

intent in including the second clause. While not announcing a strict rule or requirement, the Court concludes that this clause, fairly read, states the FTC's expectation that most individuals who meet the LFE's net worth threshold will conduct business through a business organization, with the result that the LFE will apply to the business organization but not to the individual. Conversely, however, the FTC's Statement suggests that where an individual conducts business in his individual capacity and not through an entity, the LFE may be applied to the individual.

31. Each Individual Plaintiff here conducted business through a business organization at the time the franchise agreements with Window World were allegedly entered. Based on the Court's reading of footnote 845, Rule 436, and the FTC's Statement, the Court concludes that the FTC did not intend for the Rule or the LFE to extend to individuals, such as the Individual Plaintiffs, who conduct business through business organizations. As a result, the Court concludes that the Individual Plaintiffs' net worth information is not relevant to the claims and defenses in these actions and should not be compelled.

32. Plaintiffs next argue that the Motion should be denied as to the Corporate Plaintiffs because the Corporate Plaintiffs have produced, or agreed to produce, their monthly balance sheets for the relevant time period. Plaintiffs argue that these balance sheets are sufficient to satisfy the Corporate Plaintiffs' discovery obligations in response to the Net Worth Interrogatories and that Window World's request for

documents showing the "fair market value of the total assets" of each Corporate Plaintiff constitutes impermissible discovery. The Court agrees.

33. The FTC has stated that an entity's balance sheet is a reliable measure of net worth and should be used in assessing the application of the LFE. *See* 72 Fed. Reg. 15,527 n.846 ("Net worth of an entity can readily be determined from the entity's balance sheet or other financial information, typically submitted as part the application process."). Because an entity's balance sheet reflects book value, *Crowder Constr. Co. v. Kiser*, 134 N.C. App. 190, 202–03, 517 S.E.2d 178, 187 (1999) ("The value of the company's assets and equipment as shown on the balance sheet represents the depreciated value of such assets, not their fair market value."), it appears to the Court that the FTC is satisfied that book value, rather than fair market value, is the proper measure for computing net worth under the LFE. As such, the Court concludes that to the extent the Net Worth Interrogatories to the Corporate Plaintiffs seek fair market value information for the assets of each Corporate Plaintiff, such interrogatories are not reasonably calculated to lead to the discovery of admissible evidence.[7] The Court further concludes, in the exercise of its discretion, that the Corporate Plaintiffs may satisfy their obligation to respond to the Net Worth Interrogatories by providing monthly corporate balance sheets for the relevant time period, as the Corporate Plaintiffs have agreed to do.

---

[7] Separately, the Court concludes, in the exercise of its discretion, that requiring the Corporate Plaintiffs to determine the fair market value of their assets at dates in the distant past would impose an impermissible undue burden. *See* N.C. R. Civ. P. 26(b)(1a). Unlike with book value, which can be "easily ascertained from [a] corporation's balance sheet," *Crowder Constr. Co.*, 134 N.C. App. at 197, 517 S.E.2d at 184, determining the fair market value of assets will necessarily require a much more intensive and time-consuming process.

34. Finally, the Court considers whether the net worth of the Specified Non-Party Entities is properly discoverable. As an initial matter, the Court concludes that the net worth of a parent or affiliate entity associated with the Corporate Plaintiffs is potentially relevant for purposes of assessing the applicability of the LFE. The LFE provides that it covers the "franchisee (or its parent or any affiliates)," 16 C.F.R. § 436.8(a)(5)(ii), and in interpreting the LFE, the FTC's Statement provides that the LFE "makes clear that a franchisor may aggregate commonly-owned franchisee assets in determining the availability of the large entity exemption[,]" 72 Fed. Reg. 15,528. Accordingly, to the extent that the Specified Non-Party Entities are in fact "parents" or "affiliates" of the Corporate Plaintiffs as defined in 16 C.F.R. § 436.1,[8] their net worth information may be relevant evidence in this action.

35. The parties, however, have done little to assist the Court in determining the parent or affiliate status of the Specified Non-Party Entities. Neither side devoted much, if any, attention to this issue in their briefs or at the November 13 hearing. The current record is thus unclear as to the nature of the relationship that may exist between any Corporate Plaintiff and all but one of the Specified Non-Party Entities, and neither party has offered evidence showing that any Specified Non-Party Entity is or is not a parent or affiliate of any Corporate Plaintiff.[9]

---

[8] Rule 436 defines "Affiliate" as "an entity controlled by, controlling, or under common control with, another entity." 16 C.F.R. § 436.1(b). The term "Parent" is defined as "an entity that controls another entity directly, or indirectly through one or more subsidiaries." *Id.* § 436.1(m). Window World's Net Worth Interrogatories embrace these definitions.

[9] Window World has offered evidence through Ms. Lawton that Plaintiff Window World of St. Louis, Inc. utilizes Specified Non-Party Entity Elizabethdawn, Inc. "for advertising placement and support." (Lawton Aff. ¶ 10(d) n.11.) Ms. Lawton avers that Elizabethdawn,

36.    Plaintiffs, as the parties resisting discovery, "bear[] the burden of showing why the motion to compel should not be granted." *Nat'l Fin. Partners Corp.*, 2014 NCBC LEXIS 50, at *26. The Court concludes, in the exercise of its discretion, that Plaintiffs' failure to carry their burden here requires that the Court grant the Motion as to the net worth information concerning the Specified Non-Party Entities. As more fully explained below, however, the Court, in the exercise of its discretion, will narrow the Net Worth Interrogatories in certain respects to address their overbreadth and to prevent an improper fishing expedition.

37.    First, our courts have observed that "there is no discovery provision that authorizes posing interrogatories to a non-party," *Mayfield v. Parker Hannifin*, 174 N.C. App. 386, 395, 621 S.E.2d 243, 250 (2005), and Rule 33(a) of the North Carolina Rules of Civil Procedure requires a corporate party only to "furnish such information as is available to the party," N.C. R. Civ. P. 33(a). North Carolina courts do not appear to have addressed, however, whether information held by a parent or affiliate is "available" to a responding party, such as Plaintiffs here.

38.    Under Federal Rule 33,[10] an entity is "obliged to . . . respond to the interrogatories not only by providing the information it has, but also the information

---

Inc. is owned equally by Annette Lomax and Kimberly Gillette, who are the spouses of the owners and officers of Plaintiff Window World of St. Louis, Inc. (Lawton Aff. ¶ 10(d) n.11.) As such, Specified Non-Party Entity Elizabethdawn, Inc. does not appear to qualify as a "parent" or "affiliate" of Plaintiff Window World of St. Louis, Inc. *See* 16 C.F.R. § 436.1(b), (m).

[10]  Federal Rule of Civil Procedure 33 is nearly identical to North Carolina's Rule 33 and provides that interrogatories must be answered "by the party to whom they are directed" or "if that party is a public or private corporation, a partnership, [or] an association, . . . by any

within its control or otherwise obtainable by it." *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000); *see, e.g.*, *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 n.1 (S.D. Fla. 2011) ("[U]nder this [control] principle, discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation."); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) ("Rule 33 requires that a corporation furnish such information as is available from the corporation itself or from sources under its control."); *Ferber v. Sharp Elecs. Corp.*, No. 84 Civ. 3105 (RO), 1984 U.S. Dist. LEXIS 24861, at \*3 (S.D.N.Y. Nov. 28, 1984).[11]  Thus, if a corporation responding to interrogatories "can obtain the information from sources under its control, it may not avoid answering by alleging ignorance." *Goodrich Corp. v. Emhart Indus.*, No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 17190, at \*9 (C.D. Cal. June 10, 2005). "However, if the information is truly not 'available' to the corporation, i.e., it is not in their possession and the responding corporation cannot exercise control over it, than the responding corporation may state this fact in response." *Id.* at \*10.

39.    Courts have long recognized that when a "parent is served with an interrogatory, it is no defense to claim that the information is within the possession of a wholly owned subsidiary, because such a corporation is owned and controlled by

---

officer or agent, *who must furnish the information available to the party*."  Fed. R. Civ. P. 33(b)(1) (emphasis added).

[11]  Because "[t]he North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules," our courts have recognized that "[d]ecisions under the federal rules are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989).

the interrogee." *Westinghouse Credit Corp. v. Mountain States Mining & Milling Co.*, 37 F.R.D. 348, 349 (D. Colo. 1965). Conversely, however, because a subsidiary does not control the parent, the subsidiary is generally not required to furnish information held by the parent. *Id.*; *see Ferber,* 1984 U.S. Dist. LEXIS 24861, at *3 ("[T]he mere fact that defendant S.E.C. has a close corporate relationship with SSK by virtue of being a wholly-owned subsidiary does not compel S.E.C. to obtain documents or interrogatory answers from its parent."). Nevertheless, if the circumstances "indicate some form of 'control' by the subsidiary over the documents and information sought—even if the documents or other information are in the possession of the parent—the subsidiary may be required to produce the requested data or at least to make a good faith effort to do so." *Ferber,* 1984 U.S. Dist. LEXIS 24861, at *4 (citing *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1152–53 (N.D. Ill. 1979)).[12]

40. The Court finds these federal decisions persuasive and concludes that Plaintiffs should be required to respond to the Net Worth Interrogatories, but only to

---

[12] This Court has employed a similar approach under Rule 34 for the production of documents. In *National Financial Partners Corp.*, relying on federal case law for guidance, this Court held that "a litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent." 2014 NCBC LEXIS 50, at *32–33 (quoting *Am. Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. 1994)). Factors to be considered in analyzing the existence of such "control" include the following:

> (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and (e) involvement of the non-party corporation in the litigation.

*Id.* at *33 (quoting *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998)).

the extent that the net worth information concerning the Specified Non-Party Entities is available from Plaintiffs themselves or from sources under their control.

41. The Court also concludes that the time period for responsive information should be narrowed. The Net Worth Interrogatories request information "for every year" that the Specified Non-Party Entities "ha[ve] existed." Although it is unclear when these entities were created, the LFE was not adopted until 2007. Accordingly, to the extent the Net Worth Interrogatories seek information for years prior to 2007, the Court concludes, in the exercise of its discretion, they are not reasonably calculated to lead to the discovery of admissible evidence.

42. Further, although Window World seeks net worth information for all years to the present, the net worth information of the Specified Non-Party Entities for periods in which Plaintiffs do not contend that Rule 436 required Window World to provide a FDD is not relevant. As a result, Plaintiffs need only provide net worth information for the Specified Non-Party Entities for the years between 2007 and 2018 in which Plaintiffs allege that Window World was obligated to provide FDDs but failed to do so.

43. Finally, as provided under Rule 33(c) and for the reasons discussed in connection with discovery of the Corporate Plaintiffs' net worth information above, Plaintiffs shall have the option of producing the Specified Non-Party Entities' balance sheets for the years in which Plaintiffs contend Window World failed to provide FDDs under Rule 436 in full satisfaction of their obligation to respond to the Net Worth Interrogatories as they relate to the Specified Non-Party Entities.

IV.

CONCLUSION

44.    **WHEREFORE**, the Court, for the reasons stated herein and in the exercise of its discretion, hereby **GRANTS in part** and **DENIES in part** Window World's Motion to Compel and **ORDERS** as follows:

    a. As to the Net Worth Interrogatories seeking the net worth of the Individual Plaintiffs, the Corporate Plaintiffs, and the Unspecified Non-Party Entities, the Motion is **DENIED**.

    b. As to the Net Worth Interrogatories seeking the net worth of the Specified Non-Party Entities, the Motion to Compel is **GRANTED** subject to the following limitations:

        i. Plaintiffs shall be required to respond only to the extent the Specified Non-Party Entities' net worth information is available from Plaintiffs themselves or from sources under their control;

        ii. Plaintiffs shall be required to respond only as to those years between 2007 and 2018 in which Plaintiffs allege that Window World was obligated to provide FDDs but failed to do so;

        iii. Plaintiffs shall not be required to include in their responses the fair market value of the total assets of the Specified Non-Party Entities; and

iv. Plaintiffs may produce balance sheets for the Specified Non-Party Entities in full satisfaction of their obligation to respond to the Net Worth Interrogatories.

**SO ORDERED**, this the 19th day of December, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge
